**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**HONORABLE JOHN A. KRONSTADT, JUDGE PRESIDING**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| **Vs.** | ) | **No. CR21-00335-JAK** |
| **JEFFREY MOFFATT,** | ) | |
| **Defendant.** | ) | |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**LOS ANGELES, CALIFORNIA**

**THURSDAY, MAY 22, 2025**

**MIRIAM V. BAIRD, CSR 11893**
**OFFICIAL U.S. DISTRICT COURT REPORTER**
**411 WEST FOURTH STREET**
**SUITE 1-053**
**SANTA ANA, CALIFORNIA 92701**
**VELIZBAIRDMIRIAM@GMAIL.COM**

**A P P E A R A N C E S**

**ON BEHALF OF THE PLAINTIFF, UNITED STATES OF AMERICA:**

NISHA CHANDRAN
DAVID LACHMAN
U.S. DEPARTMENT OF JUSTICE
U.S. ATTORNEY'S OFFICE
312 NORTH SPRING STREET
12TH FLOOR
LOS ANGELES, CALIFORNIA 90012

**ON BEHALF OF THE DEFENDANT, JEFFREY DEAN MOFFATT:**

IN PRO SE

LOS ANGELES, CALIFORNIA; THURSDAY, MAY 22, 2025; 9:58 A.M.

---

THE COURT: Case CR21-00335: United States of America v. Jeffrey Dean Moffatt.

09:58AM

State your appearances, starting with the United States.

MS. CHANDRAN: Nisha Chandran and David Lachman on behalf of the United States.

09:58AM THE COURT: Good morning, Ms. Chandran.

Good morning, Mr. Lachman.

Mr. Moffatt, would you state your name, please.

THE DEFENDANT: Jeffrey Dean Moffatt.

THE COURT: Good morning, Mr. Moffatt.

09:58AM THE DEFENDANT: Good morning, Your Honor.

THE COURT: I hope you didn't have any difficulty getting here today.

THE DEFENDANT: I had two asthma attacks on the way down here.

09:58AM THE COURT: Are you doing all right now?

THE DEFENDANT: I am now, yeah. I have to use this mask to get through traffic. I wish we would have been able to do this by Zoom but ...

THE COURT: Well, we cannot do proceedings by Zoom.

09:58AM THE DEFENDANT: Okay.

THE COURT: In the future, in trial proceedings and so on, they're in person.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Thank you.

09:59AM The purpose of today's hearing, which has been continued twice, was to discuss the representation of Mr. Moffatt and how that affects the overall schedule.

So Mr. Moffatt, I might ask -- bear with me, please.

09:59AM I'm not asking you to disclose any communications you have had with potential counsel. But my question is, at this time, do you anticipate engaging counsel to represent you?

THE DEFENDANT: As of right now, I'm going to seek 10:00AM counsel, but I would like 90 days to be able to -- to reach out to counsel and see if I can engage somebody.

THE COURT: Ms. Chandran.

MS. CHANDRAN: Yes, Your Honor. As to the issue of retaining counsel, this issue has been present before the 10:00AM Court and has been discussed for at least a month now since our first proceedings when prior CJA appointed counsel was seeking to relieve themselves of the case. So 90 days is simply too long and not appropriate at this time.

Additionally, as to the defendant proceeding pro 10:00AM se, the government also has several objections to that.

Those objections, namely, fall into three categories.

First, on this record, it would simply not be appropriate for the defendant himself to proceed pro se because his request is simply not unequivocal. At this point, although the defendant himself is the one who requested to proceed pro se, he has sought to appeal the Court's order granting his ability to proceed pro se to the Ninth Circuit. He has also moved to stay the order allowing him to proceed pro se.

In that filing, the defendant himself has explained why he should not be allowed to proceed pro se. He has said that he doesn't have experience in criminal law. He has said that proceeding pro se and representing himself would exacerbate his own medical conditions.

So on this record, it would just simply not be appropriate to find that the defendant has made any sort of unequivocal request to proceed pro se.

Beyond that, allowing him to proceed pro se is also very clear in this case only for the purpose of delaying these proceedings.

Again, sort of harping back to what we just discussed as to the defendant's ability to retain outside counsel, this matter has been -- was filed in 2021. The defendant has known about the many upcoming trial dates, and each time on the eve of trial has sought to replace his

counsel, either within the federal public defender's office, now we see it with the appointed CJA counsel, and now in its latest iteration, the request for a substantial amount of time to potentially retain additional counsel.

10:02AM So under Ninth Circuit precedent, it's very clear that this Court can deny a request to proceed pro se if the only purpose is to delay the trial date or to delay proceedings in the case.

So the Court has already seen the defendant's attempts really are to manipulate these proceedings. He has filed false documentation in support of his medical conditions to this Court; has failed to appear for many status conferences. He has made -- or his wife has made many frivolous filings to intervene and many ex parte communications with this Court.

Also, defendant has filed many frivolous Ninth Circuit filings in attempts to remove jurisdiction from this Court, forcing this Court to remind the defendant many times that it retains jurisdiction when the appeals themselves are not properly filed and not proper interlocutory appeals.

Finally, Your Honor, this Court, of course, under Ninth Circuit precedent, can always terminate an order allowing the defendant to represent himself if the defendant obstructs proceedings or disregards a court order.

10:03AM That is exactly what we have already seen is

happening here. We don't need to speculate about whether that would happen. We're seeing it happen already.

The defendant's charge conduct in this case itself focuses on repeatedly disobeying court orders, stating that he had been disbarred.

Again, we're seeing before this Court this exact same pattern of conduct here.

Prior counsel filed an order to show cause as to why the defendant's wife should not be held in contempt for violating this Court's orders.

Again, this Court has been issuing repeated orders in response to the Ninth Circuit filings that are mere attempts to deprive the Court of jurisdiction as we come close to a trial date or as we come close to a status conference.

So again, Your Honor, all of these different -- all of the defendant's different routes to delay the proceedings in this case all show independently, but then certainly as a whole, that it would just be inappropriate for the defendant to proceed pro se.

THE COURT: All right. I'll come back to you, Ms. Chandran.

Mr. Moffatt, is there anything you wanted to say in response at this time before I ask some questions of Ms. Chandran?

10:05AM 10:05AM 10:06AM 10:06AM 10:06AM

THE DEFENDANT: I'd like to object to the false filings of medical records. There hasn't been a single false filing for medical records that I've done. I've had a doctor that I -- that used a corporate letterhead but saw me privately. Then we have had my neurosurgeon -- or neurologist. And then we have the most recent asthma specialist that I saw. So those are -- those were true.

So I object to the fact that she's saying I'm filing false.

The fact that I asked to be pro se is incorrect also. I asked to -- I've asked this Court to require my counsel to actually do work. You know, to have been a 20-year attorney, to see the total failure to do any discovery, to put the Court on notice of new cases is astounding.

You know, I brought this to the Court's attention. You basically said, Mr. Moffatt, as a defendant, you have the ability to plead guilty, not guilty, take a jury trial or bench trial. And that's really all you have to say as far as being in your courtroom.

I think the Sixth Amendment says something different. I think the -- you know, the fact that I filed that motion in the Ninth Circuit, the -- the documents you filed all showed pre Shinn versus Ramirez requirements.

In Shinn versus Ramirez, they basically said that

you have to -- you have to point out the errors of your counsel at the trial court level and you had to make a record. I've tried to do that.

And the fact that there's been -- on my side, there's been no discovery, I find appalling. I would love to have appointed counsel who would actually do work rather than try to play the "let's do a plea bargain" type thing.

THE COURT: Thank you. With respect to your statement that -- of an order that I've issued or statements that I've made, I'm not going to get into that in any depth. It's just to say that I don't agree with that characterization.

With respect to the process here --

THE DEFENDANT: Okay.

THE COURT: Ms. Chandran, the process that led to having Mr. Moffatt potentially -- presently representing himself was that I determined that based on the number -- the four prior counsel and the nature of the proceedings that it was not appropriate to appoint new counsel.

I'm not going to get into the details of that. Those are things that I previously determined.

So -- and that is what then led to inviting Mr. Moffatt to determine to seek to engage counsel. Because there had been four prior counsel who were appointed, both through the federal public defender and CJA counsel. And the

relationship -- relationships each ended.

I understand, Mr. Moffatt, your position, that you want to call to my attention what you think are shortcomings and what counsel did. Those are matters that we've discussed and addressed previously in certain in camera processes.

Ms. Chandran, let me ask you this question. I know you've objected to the request by Mr. Moffatt for the additional 90 days to determine if he can engage counsel. What is your position as to the -- what is your position as to whether I should consider appointing another CJA counsel? Or CJA counsel as advisory counsel?

MS. CHANDRAN: Your Honor, the government's position is the appointment of CJA counsel is the best option at this point, to appoint another counsel; namely because -- I understand the -- that the Court had suggested that the defendant proceed pro se in light of the disagreements with prior counsel. However, at least with prior appointed CJA counsel, this Court saw that there were at least some guardrails put on to the defendant's filings. Certain motions were withdrawn when they were inappropriate. And CJA counsel was able to sort of monitor and serve as guardrails to many of the delays in the proceedings.

So at this point, having additional -- having counsel appointed that understands the Court, that can proceed with preparing this case for trial in an expeditious

fashion, rather than waiting 90 days, seeing if the defendant is able to retain additional counsel, then waiting for that counsel to either get up to speed to determined to be satisfactory or not, it just makes sense at this point to appoint CJA counsel and for this Court to set a firm trial date and ask that CJA counsel who'd be appointed be apprised of that firm trial date and be prepared to try that case on that date.

THE COURT: What is your position, Mr. Moffatt?

THE DEFENDANT: I would welcome CJA counsel, a firm trial date. When there's been zero discovery, I have a problem with that. I think that there needs to be quite a bit of discovery.

THE COURT: All right. Just a minute.

MS. CHANDRAN: Your Honor, if I may just clarify one thing that I said. Of course, if Mr. Moffatt wants to retain additional counsel in the time period of -- of a set trial date, and the government would request that that trial date be set within 60 days, in light of how long this case has been pending. So of course, the government's request for CJA counsel is without any prejudice to defendant's ability to retain counsel within that time period.

THE COURT: Mr. Moffatt.

THE DEFENDANT: Well, 60 days for a CJA counsel to get up to date, up to speed and to have a trial and have

discovery done by then, I think that's unreasonable.

I do welcome the CJA counsel.

THE COURT: All right. Just a minute. Mr. Moffatt, I want you to be mindful of certain things --

10:12AM THE DEFENDANT: Yes, sir.

THE COURT: -- that are significant in connection with a decision whether to -- whether -- a decision whether I would appoint yet another CJA counsel.

I want to put this in the context. I want to make 10:12AM sure that you understand the nature of the charges that are being asserted in this case. I want to make sure that you're aware of the penalties that could be imposed if you were found to have -- found guilty of one or more of the charges. I want to make sure you're mindful of the issues and 10:13AM challenges that can occur if you do represent yourself.

As I have noted, there have been four prior counsel who have represented you in this matter. And you've expressed today some reasons why you were dissatisfied with that representation. That's -- that's an issue that we've 10:13AM discussed at length in certain in camera proceedings.

There is -- there has also been a pattern in which your spouse has been involved in these proceedings in what I would call an unusual manner in terms of seeking to -- for example, seeking to intervene as a party and seeking to 10:13AM present issues on matters, which has also, I think, created

issues with respect to your representation by the four prior counsel.

We've had -- we've had many discussions prior to today about steps that you might take to work collaboratively with the counsel who is representing you, including at the most recent -- the most recent time we were all gathered in the courtroom, that there was an opportunity -- you know, you had the opportunity to confer again with then -- with the counsel who then represented you about issues, including a potential resolution of the case, something that I'm not -- I play no role in that, and I have no view on that. But that was an opportunity which, again, didn't result in progress in terms of the attorney-client relationship.

So I want to make -- I want to make -- although I think you do understand these things, I think it's important that we put the -- into context where we are. I understand what your position is as to the timing of a trial. We'll come to that later as well.

But the -- I'd like to have -- Ms. Chandran, would you please state the elements of the charge that -- charges that are pending.

MS. CHANDRAN: Yes, Your Honor. As to counts 1 through 5, which charge the defendant with wire fraud, the elements are as follows: First, the defendant knowingly participated in or devised a scheme or plan to defraud or a

scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, promises or omitted facts.

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence or were capable of influencing a person to part with money or property.

Third, the defendant acted with the intent to defraud; that is, the intent to deceive and cheat.

Fourth, the defendant used or caused to be used an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

As to Count 6 which charges the defendant with false statements, the elements are as follows:

First, the defendant had a duty to disclose material information.

Second, the defendant falsified, concealed, or covered up such a fact by trick, scheme or fraud.

Third, the falsified, concealed or covered-up fact was material.

Fourth, the falsification and/or concealment was knowing and willful.

Fifth, the material fact was within the jurisdiction of the executive, legislative or judicial branch of the United States Government.

THE COURT: Mr. Moffatt, do you understand the charges that are pending?

THE DEFENDANT: I do.

THE COURT: And do you also understand the penalties that may be imposed if you were convicted of one or both of these charges?

THE DEFENDANT: I do.

THE COURT: Ms. Chandran, would you state what those are, please.

MS. CHANDRAN: Yes, Your Honor.

As to wire fraud in counts 1 through 5, the maximum sentence that the Court can impose is 20 years' imprisonment and three years of supervised release, a fine of $250,000 or twice the gross gain or loss of the offense, and a special assessment of $100 on each count.

As to the charge in Count 6 for a false statement, the maximum sentence the Court can impose is five years' imprisonment, three years of supervised release, a fine of $250,000 or twice the gross gain or loss, and a special assessment of $100.

THE COURT: Thank you.

Mr. Moffatt, do you understand those penalties that could be imposed if you were convicted of one or both offenses?

THE DEFENDANT: I do.

THE COURT: Okay. Thank you.

Mr. Moffatt, I'm putting this into the context of representation, which you are -- I know you're presently stating you're seeking representation by private counsel.

10:18AM Both the government and you today have stated that each side recommends that I appoint CJA counsel, although that would -- the government clarified that would not prevent you from engaging private counsel.

THE DEFENDANT: I understand.

10:18AM THE COURT: You have a right, you know, in general -- as a general matter, you have a right to be represented by counsel in a criminal matter. I know you have legal training in -- although not in criminal law; is that correct?

THE DEFENDANT: That's true.

10:19AM THE COURT: You have a law degree and have been admitted to the bar, correct?

THE DEFENDANT: Yes.

THE COURT: I want to make sure you understand that if you were to be representing yourself in this matter, that 10:19AM you would have to comply with the rules and regulations in the same way as the government lawyers in following all of the rules for the criminal proceedings.

Do you understand that?

THE DEFENDANT: I understand I'll have to get up to 10:19AM speed if that's the option you choose.

THE COURT: Yes. That's exactly the point. That if you're self-represented, it may present a challenge, because as you've stated, you don't have the experience as a -- didn't have the experience when you were practicing law in handling criminal matters in federal proceedings, correct?

THE DEFENDANT: My experience was administrative law only.

THE COURT: If you were to be representing yourself in this matter, you would -- the government would be represented by persons who are counsel, lawyers who are experienced in criminal proceedings. There are a range of complexities in the matter from this point.

We're talking about moving forward to a trial. A trial process as you -- would involve -- present a final pretrial conference where any disputes about exhibits, about witnesses, about what evidence may be admitted, whether any motions in limine should be -- are appropriate. Either side may bring that sort of thing.

I would then be addressing those issues as we move forward to trial. That's one of the things that you, if you were representing yourself, you would have to be handling.

Do you understand that?

THE DEFENDANT: I do.

THE COURT: Then in terms of the trial, the trial starts, there is a selection -- assuming, again, it's

proceeding as a jury trial, there's a selection process for jurors.

Have you -- were you ever involved -- I know you mentioned that your area of practice was administrative law.

10:21AM Did you ever participate in a jury trial on behalf of a client?

THE DEFENDANT: I was the plaintiff in a jury trial once.

THE COURT: Again, that's another element of the 10:21AM process where there can be complexity inasmuch as -- just a minute.

There can be some complexity in terms of what we call the voir dire of jurors, which I do. Then discussion with both sides about responses by jurors, and whether either 10:21AM side will seek to challenge a juror for cause, and the bases upon which a cause challenge can be made, why either side contends that under the applicable rules it can -- it believes that that juror could not be fair and impartial.

So do you understand that there's that complex of 10:22AM the process?

THE DEFENDANT: I do.

THE COURT: Following the selection of the jury and alternates, which are selected in the same manner, the trial begins with what we call opening statements where each 10:22AM side -- where the government makes an opening statement as to

what it contends the evidence will show.

Do you understand that?

THE DEFENDANT: I understand that's the process. I haven't done it, but I understand that's the process.

10:22AM THE COURT: Then after the government makes its opening statement, you may -- the defense may make an opening statement at that time, or the defense can reserve whether to make an opening statement until the defense presents a case, if the defense intends to present a case.

10:22AM Do you understand that?

THE DEFENDANT: The concept, yes. The mechanics, I don't.

THE COURT: There's strategic issues that are presented there as to whether to -- whether or not to -- when 10:23AM to present an opening statement.

Given that -- it's just a strategic issue; should the opening statement be made before the evidence -- all evidence starts, or should the opening statement be made when the defense intends to present its case? Again, it's a 10:23AM strategic decision. More frequently than not, opening statements are made by both sides. But again, it's a strategic matter. And I'm raising it just to make sure you understand that if you were representing yourself, that would be another strategic decision that you would have to make.

10:23AM Do you understand that?

THE DEFENDANT: I understand the concept. But, again, the mechanics, I have no idea.

THE COURT: That's -- I think that's what I'm pointing out, is that if you're going to be representing 10:23AM yourself through the trial, you'll be -- you may not -- as you've stated, you don't have experience as a lawyer who represented a party in a jury trial. But if you're representing yourself in a jury trial, there are a lot of decisions you have to make and strategic decisions you have 10:24AM to make.

I want to make sure you understand that.

THE DEFENDANT: Understand.

THE COURT: And after the opening statements are made, then the evidence is presented in the trial. Evidence, 10:24AM generally speaking, is in the form of exhibits and testimony. The government has the burden -- you're presumed innocent. The government has the burden of proof beyond a reasonable doubt by presenting admissible evidence to support its case.

Do you understand that?

10:24AM THE DEFENDANT: Again, the concept, yes. The mechanics, I have no clue.

THE COURT: The government, with experienced lawyers, will be asking questions of witnesses and seeking to have that evidence presented. And then if you think -- if 10:24AM the defense believes that a question is not permitted by the

rules of evidence or that an answer should be stricken because there's some issue about the rules of evidence that is warranted, that issue has to be raised by the defense at the time during the testimony.

10:25AM Do you understand that?

THE DEFENDANT: Again, the concept; the mechanics, not the clue.

THE COURT: It's the same point. If you're representing yourself, that's something else you would have

10:25AM to do; including having sufficient familiarity with the rules of evidence to know what would be an appropriate objection.

Then after the direct and cross-examination of the witnesses that the government has called, there can be redirect testimony of those witnesses by government.

10:25AM After the government concludes its presentation of witnesses, then the admission of those exhibits that are found to be admissible, the government rests. And at that point, there's certainly procedural things that can occur, where the defense can raise issues at that time as to the

10:25AM adequacy of the government's case.

Do you understand that?

THE DEFENDANT: Again, the concept. The mechanics, no.

THE COURT: Same point then.

10:26AM Then after that, assuming the matter will be

proceeding, notwithstanding any motion that was brought, it would be up to you as to the defense to decide whether the defense wishes to present a defense -- evidence in the defense.

10:26AM Do you understand that?

THE DEFENDANT: Same response: Concept; but the mechanics, no idea.

THE COURT: One of the elements of a defense -- one issue in a defense is whether you would testify. Because as 10:26AM you -- I think you know, under the Fifth Amendment, you have the absolute right not to testify. But you also can decide that you want to testify. Whether you're representing yourself or whether you're represented by counsel, that ultimate decision is yours to make.

10:26AM Do you understand that?

THE DEFENDANT: That I understand.

THE COURT: Again, it's an important decision. If you were -- if you're represented by counsel, you'd be conferring with counsel about it.

10:27AM If you were representing yourself, you would have to make that decision on your own.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: There are times where a person -- a 10:27AM defendant elects to represent him or herself where the Court

may appoint advisory counsel to assist the defendant during the course of the trial. There's no right to advisory counsel.

Do you understand that?

10:27AM THE DEFENDANT: I'm not sure I agree with it. I understand your point. I see case law a little bit differently. I understand your point.

THE COURT: The point I'm saying is that I don't think there's -- as a matter of law -- do you disagree with that, Ms. Chandran, there's no absolute right to advisory counsel if one is self-represented?

10:27AM

MS. CHANDRAN: Your Honor, the government agrees with the case law as the Court has explained it.

THE COURT: Okay. Thank you.

10:28AM I say all of these things -- is there anything, Ms. Chandran, you wanted to add about the issues that are presented when a party represents him or herself in a criminal proceeding like this one?

MS. CHANDRAN: Nothing further, Your Honor.

10:28AM THE COURT: Mr. Moffatt, I understand we've had this discussion where you've acknowledged that you understand what I'm saying. But you're also stating you don't have a written -- you don't have a specific understanding about certain things, such as voir dire or jury selection.

10:28AM MS. CHANDRAN: Your Honor, just one additional

point that is specific to this case, that the discovery in this case, while not voluminous in the -- insofar as that this is a complex case, but there is approximately 17,000 pages of discovery in this case.

10:28AM So the defendant would need to have access to a database, have access to and experience in reviewing a relatively sizable amount of information in advance of trial.

THE COURT: Thank you.

You're aware of that as well, Mr. Moffatt, because 10:29AM it's one of the issues you've raised about whether you had been able to review this, correct?

THE DEFENDANT: Exactly.

THE COURT: Again, the reason that I have gone over those things, many of which we've discussed in the past, is 10:29AM so that you fully understand that if I were to appoint you CJA counsel, and if -- it's important -- it's not just important. It's very important that you work collaboratively with that counsel and recognize the areas of -- counsel has the expertise in many of the areas -- all of the areas that 10:29AM I've just gone over with you, where you've -- as you pointed out, these are not areas in which you have expertise notwithstanding your status as an attorney.

You understand that?

THE DEFENDANT: I do.

10:30AM THE COURT: So as I also -- I want to make clear,

if this -- if new counsel is appointed and is -- or if you were to engage new counsel on your own and you're not -- that's -- you're not in any way precluded from doing that. And as we move forward, the CJA counsel hypothetically were to ask to be excused as counsel because of issues there have been working with you, then that will bring us back to whether at that point having five counsel seeking to withdraw whether I would appoint another counsel or at that point say that you will have to represent yourself because I don't have a sufficient -- I don't think there's a reasonable basis upon which I can -- I may say, because I don't think there could be a reasonable basis upon which I can conclude that you could work with counsel effectively in terms of your representation.

And in that sense have in effect agreed to -- have waived your right and agreed -- not agreed, but committed to representing yourself.

Do you understand that?

THE DEFENDANT: Your Honor, when I've had counsel before, I've had counsel that if I pointed out -- the second one, Claire Rogerson, a four-month seasoned attorney, refusing to take any suggestions on administrative law, which I'm an expert at, and the first one as well.

So I mean, I understand your position that I need to work with counsel. But when I have counsel that -- in a

specific type of law, they have zero experience and they're not paying attention to the Supreme Court cases --

THE COURT: Okay.

THE DEFENDANT: -- it makes it a little bit difficult.

I welcome the opportunity, Your Honor. I understand that the Court is probably frustrated as well as I am on this situation.

THE COURT: I don't think that's correct. I think that I have been -- we've had many conferences with -- about your representation by counsel. I don't -- what I'm saying is that if you don't take reasonable steps to reasonably engage with and be represented by counsel who have experience in criminal matters, the experience that you stated you do not have, then it will not -- we will not be going over and over and over again and appointing yet counsel after counsel after counsel.

Instead, in effect, it will be deemed that you have waived your right to have yet another counsel appointed because -- based on the facts that I then have, and I don't have them yet. I'm not making a determination yet. But if that were to happen, then it's not going to be -- I would not be then saying, Oh, we'll just appoint someone new.

THE DEFENDANT: I understand the point.

THE COURT: Ms. Chandran, anything you wanted to

add on that?

MS. CHANDRAN: No, Your Honor.

THE COURT: Here's what I'm going to do. I'm going to have CJA counsel appointed but under the terms and conditions that I've stated, that -- which are not unusual. They're the norm. That is to say, clients must work collaboratively with counsel. And there are areas where a client may have expertise, and there are areas where counsel has expertise. There are many areas in which counsel's expertise is the one that matters the most and is the appropriate one.

I'm not getting into attorney-client communications here. I'm just saying that there are other areas, as I said earlier today, where even if -- where the client has the final decision-making authority in terms of, for example, whether to testify. So that's important.

At the same time, Mr. Moffatt, as I've said and as Ms. Chandran observed, my having appointed CJA counsel is not in lieu of your engaging your own counsel, private counsel.

Do you understand that?

THE DEFENDANT: I do.

THE COURT: That's something that -- for you to consider at this point, whether you want to continue to pursue the discussions that you -- to which you -- not discussions, but you earlier referred to a process. If you

want to continue with that process. Because it may be that you want -- ultimately conclude you'd prefer to have the private counsel whom you select to the CJA counsel who is selected based on their sequence in the assignment order.

10:35AM Do you understand that?

THE DEFENDANT: I do.

THE COURT: That's what I'll do.

Now, Ms. Chandran, I -- you've requested that a trial date be set. You're requesting a trial be set in

10:35AM 60 days?

MS. CHANDRAN: Yes, Your Honor.

THE COURT: Do you have a basis upon which you conclude that if new CJA counsel is -- once new CJA counsel is identified and appointed, that that person -- given that

10:36AM person's overall schedule or that person's need to become familiar with this matter, that it could be realistic to try the case -- have the case go to trial in 60 days?

MS. CHANDRAN: Yes, Your Honor. The conduct itself is quite straightforward in this case in terms of -- it

10:36AM really is the same conduct -- for each of the counts, 1 through 5, it really is the same conduct that is repeated for various clients. The underlying facts are quite simple. The defendant is well aware of those facts.

The defendant was disbarred. There were many court

10:36AM orders informing him of his disbarment. He continued to

represent clients.

So while each of those clients that is listed in counts 1 through 5 bears a very similar, straightforward pattern.

10:36AM In addition, the government would be happy to voluntarily disclose the government's trial exhibits, perhaps slightly earlier than the Court's regular schedule, to allow a new CJA counsel to get up to speed.

But at this point, a lengthy time period to set the trial out is simply not needed at this point. 10:37AM

THE COURT: Mr. Moffatt?

THE DEFENDANT: With no discovery on my side, 60 days is unreasonable to -- especially for a new counsel to get up to speed on -- on the facts on this case, review 17,000 documents, and do the subpoenas and file various motions. I don't see how in the world 60 days would be reasonable. 10:37AM

THE COURT: Just a moment.

MS. CHANDRAN: Yes, Your Honor, as to the discovery itself, that discovery was initially produced in 2022 to the defendant. It is quite well-organized in terms of the specific clients that the discovery pertains to. So it is quite easy to follow at this stage. 10:37AM

In terms of the issues for trial, again, I mentioned that the conduct is somewhat straightforward, but 10:38AM

really there -- the government does not anticipate any need -- any -- and has not heard from any of the defendant's prior counsel that there will be any sort of clear affirmative defense that requires significant additional discovery or anything to that nature. So this really should be a relatively straightforward trial that experienced counsel like CJA counsel that would be appointed, particularly knowing the trial date in advance, should have no issue preparing for.

10:38AM

THE COURT: Just a minute.

Do you presently have a time estimate for the length of the government's case at trial?

MS. CHANDRAN: Approximately three days, Your Honor.

10:39AM

THE COURT: Thank you.

Ms. Chandran, when you earlier described the penalties that could be imposed in terms of time in custody, supervised release, fines, and similar things, you didn't refer to forfeiture. Is that -- are forfeiture penalties also an issue?

10:40AM

MS. CHANDRAN: There is a restitution issue in this case, Your Honor. But at this time, there doesn't -- at this time, there doesn't appear to be a forfeiture issue.

THE COURT: All right. Thank you.

10:41AM

Do you understand that as well, Mr. Moffatt?

THE DEFENDANT: I do.

THE COURT: Well, here's what I'm going to do. I'm going to set a status conference, further status conference for June 5, 2025, at 10 a.m. The purpose -- at 10 a.m. Mr. Moffatt, you're to be here in person.

The -- when the final calendar issues for that date, it's -- it may be that the time change could adjust slightly. But assume 10 a.m.

The purpose of that status conference will be to hear from what would then have been the newly appointed CJA counsel to discuss the status of the further proceedings in the matter.

I will at this time, subject to further review, set the trial in this matter for August 26, 2025, which is later than the 60-day period that the government has proposed.

Is the government available on that date?

MS. CHANDRAN: Your Honor, I am currently scheduled to be in trial on August 26th. So if the Court could set it for two weeks before that or two weeks after, that would be appreciated.

THE COURT: All right. Just a minute. September 9th.

MS. CHANDRAN: That's fine, Your Honor.

THE COURT: Are you available then, Mr. Moffatt?

THE DEFENDANT: Yes.

THE COURT: I'm going to set the trial for September 9, 2025 at 8:30 a.m., with the final pretrial conference to be on August 28, 2025.

Could you -- can you or Mr. Lachman participate in the final pretrial on that date?

10:45AM

MS. CHANDRAN: Yes, Your Honor.

THE COURT: You're available on that date as well?

THE DEFENDANT: It's my birthday, darn it, but I guess so. Yes, I'll be available.

10:45AM

Okay. The purpose then of the June 5, 2025, status conference is to confer with newly appointed counsel as to these planned dates for the find pretrial conference and trial.

Mr. Moffatt, you understand that you have a right to a speedy and public trial?

10:45AM

THE DEFENDANT: I do.

THE COURT: You understand that this matter has been pending for a long period of time, and that the government has proposed a trial date in 60 days? You proposed a trial date later than that.

10:46AM

Do you understand that?

THE DEFENDANT: I do.

THE COURT: One of the issues to be discussed at the upcoming hearing is a more formal speedy trial waiver. I want to make sure that you understand that by at this time

10:46AM

agreeing to a trial date on September 9, 2025, you're giving up your speedy trial rights to the extent that the --

THE DEFENDANT: I understand.

THE COURT: -- trial will happen on that date and not sooner?

THE DEFENDANT: I understand. And I waive.

THE COURT: All right. Thank you.

Anything you wanted to add on the speedy trial waiver, other than you'd like to have it put into writing once new counsel is available.

MS. CHANDRAN: Nothing further, Your Honor. The government will coordinate with new counsel to file a stipulation as well.

As I say -- as I've said, the June 5th status conference, that the purpose is to discuss these dates. And I don't -- again, there could be issues that -- I don't know what issues may come up. We'll have to address them as they come up with respect to this schedule.

Anything else you wanted to raise today?

MS. CHANDRAN: Not from the government. Thank you.

THE COURT: Anything else you wanted to say today?

THE DEFENDANT: Well, in both of the hearings that I wasn't present physically, I was trying to appear by Zoom. So I wasn't trying to be disrespectful to the Court.

I did on the last situation, I think May 8th, I did

file early a request for Zoom.

THE COURT: I understand -- well, when you're ordered to be here in person, you shall be here in person. It is a court order. There were prior court orders -- I'm not going repeat them because they're all on the docket -- that required your appearance in person. So I expect you to comply with all court orders, including the one with respect to June 5.

THE DEFENDANT: The threat of being incarcerated for failing to follow one is pretty severe, but I understand.

THE COURT: Well, it's actually quite common that if a person is ordered to be present in the courtroom and doesn't appear, a bench warrant can issue for the arrest of that person.

Now, it depends on the facts and circumstances. But in this circumstance, the initial order, whether it was to appear in person, there was no in-person appearance, an order issued continuing the hearing stating that if there were no appearance, sanctions might be imposed. And there was no appearance. And so on the subsequent order, that issue of a potential bench warrant was mentioned in light of the facts -- all the facts and circumstances. But that is important.

The same would be true, for example, at the time of the trial. If the trial proceeds in this matter and the

parties are directed to be here for the trial, someone doesn't appear, it raises issues. How they are handled depends on the facts and circumstances.

That concludes our hearing. I'll see you in two

10:49AM weeks. Thank you.

(Proceedings concluded at 10:49 a.m.)

CERTIFICATE

I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN THE ABOVE MATTER.

FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

/s/ Miriam V. Baird 08/13/2025

MIRIAM V. BAIRD DATE
OFFICIAL REPORTER