BILAL A. ESSAYLI
Acting United States Attorney
JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division
NISHA CHANDRAN (Cal. Bar No. 325345)
DAVID C. LACHMAN (Cal. Bar No. 261711)
Assistant United States Attorneys
Major Frauds Section/National Security Division
1100/1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-2429/5564
Facsimile: (213) 894-2927
E-mail: nisha.chandran@usdoj.gov
david.lachman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY DEAN MOFFATT,<br><br>Defendant. | No. 2:21-CR-00335-JAK<br><br>MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DEFENDANT'S ALLEGED MEDICAL CONDITIONS<br><br>**FILED UNDER SEAL** |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Nisha Chandran and David C. Lachman, hereby moves in limine to preclude defendant JEFFREY DEAN MOFFATT from introducing irrelevant evidence and argument at trial regarding his alleged medical conditions.

//

//

This motion is based on the following memorandum of points and authorities, on the files and records in this case, and on such argument as the Court may permit.

Dated: October 6, 2025

Respectfully submitted,

BILAL A. ESSAYLI
Acting United States Attorney

JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division

/s/
NISHA CHANDRAN
DAVID C. LACHMAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

From April 2016 to 2020, defendant JEFFREY DEAN MOFFATT ("defendant") defrauded and deceived the Social Security Administration ("SSA") by repeatedly submitting forms to the SSA on which he falsely stated, under penalty of perjury, that he had never been suspended or disbarred by any court or bar to which he had previously been admitted. In fact, the Arizona Supreme Court had disbarred defendant for misconduct in April 2016, and the Ninth Circuit Court of Appeals and other federal courts reciprocally disbarred him shortly thereafter. For his conduct, defendant stands charged with five counts of wire fraud and one count of making false statements to the SSA. Trial is set to begin on October 7, 2025.

At a status conference on September 30, 2025, and through his proposed jury instructions, defendant indicated that he intends to introduce evidence at trial that he experienced a traumatic brain injury that impaired his cognitive abilities and impacted his ability to form the requisite intent to commit the charged crimes.[1] The Court ordered defendant to proffer evidence supporting this defense. In response, on October 2, 2025, defendant filed a two-page medical record under seal reflecting the "preliminary results"

[1] Defendant has proposed that the jury be "instructed to consider the Defendant's medical conditions, including frontal lobe damage, a tumor on the brain interior, and a cyst on the outside, which may affect cognitive abilities and intent. You must determine whether these impairments impacted the Defendant's ability to form the necessary intent for the charges of wire fraud and making untrue statements to the government." (Dkt. 226 at 2-3.) The government maintains that this instruction is improper for all the reasons set forth in the government's objection to defendant's jury instructions. (Dkt. 238.)

of a Computed Tomography ("CT") scan. (Dkt. 258, Ex. A.) The report indicates that defendant had a medical condition that was "slightly advanced" for a patient of defendant's age. The report, however, contained no explanation regarding how this condition affected defendant's cognitive abilities, if at all, or how it impaired his ability to intend to defraud and deceive the SSA.

The government respectfully moves in limine to exclude any evidence or argument concerning defendant's alleged traumatic brain injury and its purported effect on his ability to form the specific intent necessary to commit wire fraud and make false statements. The Court should exclude this evidence for multiple independent reasons. First, defendant's medical records are inadmissible without expert testimony to explain the significance of the CT scan results, the diagnosis, and its effect (if any) on defendant's cognitive abilities. Second, defendant's medical records and any related evidence or testimony are inadmissible under Federal Rules of Evidence 401, 402, 403, and 701. They are irrelevant because defendant has not established any link between his alleged medical conditions and his inability to form the requisite criminal intent. Any testimony about the import of his medical records would require specialized medical knowledge and thus is the province of expert medical and psychological testimony, but defendant has not noticed any expert witnesses, and the time for doing so has passed. Moreover, that defendant is representing himself pro se in this criminal case despite his alleged brain injury fatally undermines any claim that he was incapable of forming the specific intent to deceive the SSA about his disbarment status. Finally, even if minimally relevant, the evidence must be excluded under Rule 403

because it presents a substantial risk of confusing the issues, misleading the jury, and eliciting improper sympathy.

## II. ARGUMENT

### A. Evidence Regarding Defendant's Alleged Medical Conditions Is Not Relevant Without Expert Testimony Establishing a Direct Link to Defendant's Ability to Form Specific Intent

Where a defendant is charged with specific intent crimes, evidence of diminished capacity may be relevant to "whether the defendant possessed the ability to attain the culpable state of mind which defines the crime," but courts are justifiably wary of such defenses. United States v. Twine, 853 F.2d 676, 678 (9th Cir. 1988). "Even the most psychiatrically ill have the capacity to form intentions, and the existence of intent usually satisfies any mens rea requirement." United States v. Pohlot, 827 F.2d 889, 900 (3d Cir. 1987); see also United States v. Mezvinsky, 206 F. Supp. 2d 661, 673-75 (E.D. Pa. 2002) (excluding expert testimony on defendant's bipolar disorder and brain damage causing poor judgment and "bad choices" as irrelevant to defendant's capacity to deceive).

Evidence that a defendant suffers from a medical condition that affects his cognitive abilities is insufficient, by itself, to render that evidence admissible or to require a diminished capacity instruction. United States v. Christian, 749 F.3d 806, 815 (9th Cir. 2014), overruled on other grounds by United States v. Bacon, 979 F.3d 766 (9th Cir. 2020) (en banc). Rather, there must be some evidence, however weak, of a link between the defendant's condition and his ability to form the requisite specific intent. Id. (citing United States v. Washington, 819 F.2d 221, 225 (9th Cir. 1987)); see also United States v. Sabir, No. S4 05 CR. 673 (LAP), 2007 WL 1373184, at *5 (S.D.N.Y. May 10, 2007) ("[I]n determining whether

evidence of a mental impairment is admissible [to negate intent], a defendant is required to demonstrate clearly, in advance of trial, that there is a direct link between such evidence and the specific mens rea that the Government must prove.”). Conclusory statements as to the link between psychiatric evidence and the defendant’s mens rea do not render the evidence admissible. Id. at *6; United States v. Cameron, 907 F.2d 1051, 1067 n.31 (11th Cir. 1990).

Here, defendant’s unauthenticated medical records, standing alone, are not relevant to any material issue. The records are silent as to whether and to what extent any alleged condition impaired defendant’s cognitive abilities, if at all, in 2014. (Dkt. 258, Ex. A.) Likewise, they say nothing about his ability to intend to defraud and deceive the SSA from April 2016 through 2020 while representing over 65 claimants as their “lawyer.” (Id.) As a result, the records have no tendency to negate the specific intent to commit wire fraud or to deceive the SSA during the relevant period.[2]

At bottom, defendant’s proffered medical records fall far short of what is required for admissibility by failing to make the “link” between defendant's mental condition and his mens rea to commit the offenses. In United States v. Brown, for example, the Tenth Circuit affirmed the district court’s wholesale exclusion of the defendant’s PTSD and chemical dependency evidence because the proffered testimony failed to show how these conditions related to or tended

[2] Moreover, defendant’s proposed jury instruction references additional medical conditions -- a tumor and cysts -- not identified in the proffered medical records, further demonstrating the lack of evidentiary foundation for his purported defense.

to negate the requisite intent element. 326 F.3d 1143, 1147 (10th Cir. 2003). Here, as in Brown, defendant has shown no "link" between his alleged diagnosis and his supposed inability to form the intent to defraud and deceive.

Courts consistently hold that medical records, without accompanying expert testimony, are insufficient to establish a causal link between a medical condition and a defendant's mental state. See, e.g., Christian, 749 F.3d at 815. Here, defendant cannot establish a causal link between any alleged medical conditions and his alleged inability to form criminal intent without expert testimony. Determining whether defendant's cognitive functions are impaired, and whether any impairment affected his ability to form the intent to defraud and deceive, requires specialized knowledge in neurology, neuropsychology, or psychiatry -- subjects far beyond a lay understanding. Without expert testimony to establish this causal connection, evidence of defendant's medical conditions has no tendency to make defendant's ability to form specific criminal intent more or less probable. Yet defendant did not timely notice any expert testimony, as required under Federal Rules of Criminal Procedure 12.2(b) and 16(b)(1)(C), and his proposed witness list does not appear to include any medical professionals.[3]

[3] Federal Rule of Criminal Procedure 12.2 requires that when "a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt . . . the defendant must -- within the time provided for filing a pretrial motion or at any later time the court sets -- notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk." Fed. R. Crim. P. 12.2(b). Upon receiving such notice, the government may seek an examination of the defendant by its own expert. Fed. R. Crim. P. 12.2(c)(B). Where a defendant fails to

In sum, defendant has failed to demonstrate how evidence of his purported medical conditions would negate the specific intent elements required for wire fraud and false statements. Without a link between the medical conditions and defendant's ability to form the specific intent at issue here -- the intent to defraud and deceive the SSA by falsely representing that he had never been disbarred -- the proffered evidence is irrelevant and must be excluded. See United States v. Jackson, No. 2:13-CR-00674-CAS, 2016 WL 4472932, at *1 (C.D. Cal. Aug. 22, 2016), aff'd, 757 F. App'x 547 (9th Cir. 2018) (excluding evidence where it was "entirely unclear how any of [the witnesses' proffered] observations relate to -- or in any way negate -- the specific intent at issue").

**B. Lay Witnesses Cannot Testify Regarding the Effect of Medical Conditions on Defendant's Cognitive Abilities and Specific Intent**

Rule 701 permits lay opinion testimony only if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The 2000 amendment to Rule 701 "eliminated the risk that the reliability requirements set forth in Rule 702 would be evaded through the simple expedient of proffering an expert in lay witness

---

give timely notice of such a defense, the Court may exclude the evidence. Fed. R. Crim. P. 12.2(d)(1)(A). The motions deadline in this case was August 4, 2025, yet defendant has provided no notice under Rule 12.2 or expert disclosures under Rule 16(b)(1)(C) that he intends to introduce expert evidence relating to a mental condition bearing on guilt.

clothing." Fed. R. Evid. 701, Advisory Committee Note to 2000 Amendment.

Defendant cannot introduce lay testimony -- whether from himself, his wife, or other non-expert witnesses -- to establish that his medical condition caused cognitive impairments affecting his ability to form specific intent. The causal relationship between any medical condition and cognitive impairment, and between cognitive impairment and inability to form specific intent, requires expertise in neurology, neuropsychology, or psychiatry. Such testimony would necessarily be "based on scientific, technical, or other specialized knowledge" and would improperly circumvent Rule 702's requirements. See, e.g., Frisone v. United States, 270 F.2d 401, 402 (9th Cir. 1959); Sanchez v. Master Prof., LP, 2022 WL 2092995, at *2 (C.D. Cal. May 4, 2022) ("Under Federal Rule of Evidence 701, Plaintiff cannot self-diagnose himself. . . . Such testimony would stray too far into matters of 'scientific, technical, or other specialized knowledge' prohibited by Rule 701."); Howell v. Burns, 2021 WL 4975187, *7 (E.D. Cal. Oct. 26, 2021) (prohibiting plaintiff from testifying "regarding a diagnosis, prognosis, opinions, inferences, or causation of his alleged injuries as he has no medical expertise, training, or education"). Any attempt by defendant or lay witnesses to testify that defendant's medical conditions affected his cognitive abilities or specific intent would improperly invade the province of expert testimony and must be excluded under Rule 701.

### C. The Medical Evidence Must Be Excluded Under Rule 403 Because It Poses Substantial Risks of Unfair Prejudice, Confusion, and Jury Nullification

Even if minimally relevant, evidence of defendant's purported medical conditions must be excluded under Rule 403. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

As for mental condition testimony specifically, "[i]n light of the strong danger of misuse," district courts are directed to examine the proffered testimony "carefully to determine whether the proof offered is grounded in sufficient scientific support to warrant use in the courtroom, and whether it would aid the jury in deciding the ultimate issues." Pohlot, 827 F.2d at 905. The Court must also scrutinize whether such mental health evidence must be excluded on Rule 403 grounds. United States v. Ahrendt, 560 F.3d 69, 76 (1st Cir. 2009); United States v. Mason, 294 F. App'x 193, 200 (6th Cir. 2008) (affirming exclusion of medical evidence on Rule 403 grounds because potential that the evidence could confuse and mislead the jury outweighed the records' probative value). District courts have "wide latitude in admitting or excluding psychiatric evidence directed to the capacity of a defendant to entertain a specific intent." United States v. Demma, 523 F.2d 981, 986-87 (9th Cir. 1975).

Here, defendant's desire to introduce evidence of his alleged medical conditions is a thinly veiled attempt at jury nullification. This evidence "present[s] a dangerously confusing theory of defense more akin to justification and excuse" and incorrectly suggests to the jury that defendant can be acquitted because of his purported

medical conditions. Jackson, 2016 WL 4472932, at *1 (quoting Brown, 326 F.3d at 1147); see also United States v. Rice, 458 F. App'x 652, 653 (9th Cir. 2011) ("The evidence Rice seeks to proffer . . . is not relevant to negate the intent element of the charged crime. It is relevant as an excuse or justification for his conduct, but this is not a permissible use of evidence bearing on a defendant's diminished capacity."). Under controlling Ninth Circuit law, mental condition evidence is admissible only to negate specific intent, not as "an excuse." Twine, 853 F.2d at 678.

Evidence of defendant's alleged medical conditions, including the proffered records, also will confuse and mislead the jury. Jurors lack medical training and would be confused by unexplained medical terminology. See United States v. Barajas-Bandt, 150 F. App'x 658, 659 (9th Cir. 2005). Defendant's medical records also present the risk that jurors will draw inappropriate conclusions about defendant's ability to form criminal intent based on terms like "frontal lobe damage," "a tumor on the brain interior," or "cysts" forming on the outside of the brain" (see Dkt. 226 at 1), even though the requirements for presenting a diminished capacity defense have not been met.[4]

Finally, the medical information does not relate to defendant's guilt or any element of the charges, and "could well cause the jury

[4] Moreover, the medical record would need to be properly authenticated and meet a hearsay exception (such as the business records exception) to be admitted at trial, even if it were relevant. Defendant has not noticed the doctor who drafted the medical record on his witness list, has provided no foundation for the admission of this document, and has not indicated how he intends to authenticate it or establish that it meets the requirements of any hearsay exception.

to be influenced by sympathies having no bearing on the merits of the case." United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991). The minimal probative value of the medical records is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, and wasting time.

## III. CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant this motion and exclude all evidence, testimony, and argument concerning defendant's alleged traumatic brain injury or any other purported mental or medical condition and its alleged effect on his ability to form the specific intent necessary to commit the charged offenses.