BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
NISHA CHANDRAN (Cal. Bar No. 325345)
DAVID C. LACHMAN (Cal. Bar No. 261711)
Assistant United States Attorneys
Major Frauds Section and National Security Division
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-2249
Facsimile: (213) 894-0141
Email: nisha.chandran@usdoj.gov
david.lachman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY DEAN MOFFATT,<br><br>Defendant. | No. CR 21-00335-JAK<br><br><u>AMENDED OPPOSITION TO DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29</u> |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Nisha Chandran and David C. Lachman, hereby files its Amended Opposition to Defendant's Renewed Motion Pursuant to Federal Rule of Criminal Procedure 29 (Dkt. 290) and Amended and Supplemental Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29 (Dkt. 302), pursuant to the Court's order dated November 10, 2025 (Dkt. 305).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 18, 2025

Respectfully submitted,

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

/s/
NISHA CHANDRAN
DAVID C. LACHMAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION PAGE


MEMORANDUM OF POINTS AND AUTHORITIES....................................2

I. INTRODUCTION..........................................................2

II. SUMMARY OF RELEVANT TRIAL EVIDENCE...................................3

1. Evidence of Defendant's Multiple Disbarments.........4

2. Evidence that Defendant Knowingly Concealed and Lied About His Disbarments to the SSA.................4

3. Evidence That Defendant's Concealment and False Statements Went to Essential Aspects of the Transaction and Had the Capacity to Influence the SSA's Actions and SSA's Parting with Money...........7

4. Evidence That Defendant Used an Interstate Wire Communication to Carry Out the Scheme.................9

III. LEGAL STANDARD.....................................................10

IV. ARGUMENT.............................................................11

A. A Reasonable Juror Could Find Defendant Guilty of the Wire Fraud and False Statement Counts.....................11

1. A Reasonable Juror Could Find that Defendant's False Statements Were Material.......................13

2. A Reasonable Juror Could Find that Defendant Acted Willfully and With Intent to Defraud..........19

B. Defendant's Remaining Arguments are Improper and Should be Rejected.......................................24

V. CONCLUSION............................................................25

# TABLE OF AUTHORITIES

DESCRIPTION PAGE

**Cases**

Jackson v. Virginia,
443 U.S. 307 (1979) .......... 9

United States v. Del Toro-Barboza,
673 F.3d 1136 (9th Cir. 2012) .......... 10

United States v. Henderson,
318 F. Supp 3d 1221 (E.D. Wa. 2018) .......... 18

United States v. Jesenik,
152 F.4th 924 (9th Cir. 2025) .......... 18

United States v. Lindsey,
850 F.3d 1009 (9th Cir. 2017) .......... 18

United States v. Nevils,
598 F.3d 1158 (9th Cir. 2010) .......... 10

United States v. Ramos,
558 F.2d 545 (9th Cir. 1977) .......... 10

United States v. Rocha,
598 F.3d 1144 (9th Cir. 2010) .......... 9

United States v. Service Deli Inc.,
151 F.3d 938 (9th Cir. 1998) .......... 17

United States v. Talkington,
589 F.2d 415 (9th Cir. 1978) .......... 18

**Statutes**

18 U.S.C. § 1001 .......... 2
18 U.S.C. § 1343 .......... 2

**Rules**

Fed. R. Crim P. 29 .......... 2, 3, 8, 20

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Defendant JEFFREY MOFFATT ("defendant") was charged by indictment with five counts of wire fraud, in violation of 18 U.S.C. § 1343 ("Counts One through Five," or the "Wire Fraud Counts") and one count of false statements by trick, scheme, or device, in violation of 18 U.S.C. § 1001 ("Count Six," or the "False Statement Count"), for misrepresenting to the Social Security Administration ("SSA") that he had never been disbarred or suspended from the practice of law. After a five-day trail, the jury found defendant guilty of Count Six, but did not reach a unanimous verdict on Counts One through Five. Defendant now moves for a judgment of acquittal under Rule 29 ("Prior Motion," Dkt. 290; "Motion," Dkt. 302) (collectively, the "Motions").[1] In his Motions, defendant ignores the wealth of testimony and evidence supporting the jury's guilty verdict, including evidence that: (a) the State Bar of Arizona disbarred him in April 2016 for misconduct, and at least five federal courts followed suit in 2016 and 2017; (b) defendant falsely stated on multiple SSA forms in connection representing at least 65 claimants before the SSA that he had never been disbarred; and (c) that his false statements delayed the SSA's efforts to disqualify him from representing SSA claimants and provided independent grounds for his disqualification. Defendant's opening statement succinctly

[1] Because defendant's Motion incorporates his previously filed Renewed Motion Pursuant to Federal Rule of Criminal Procedure 29 (Dkt. 290) ("Prior Motion," Dkt. 290), the government responds to the arguments raised in both the Prior Motion and the instant Motion here.

summarized his conduct: he was disbarred, he disagreed with the disbarment, so he continued to practice law and get paid for it.

Instead, he rehashes the arguments he made at trial, which the jury rejected as to Count Six, and at least some jurors rejected as to Counts One through Five, and asks the Court to speculate as to what the jury's verdict would have been if it had resolved all evidentiary conflicts against the government. Defendant's desire that the Court accept his view of the facts is not enough to disturb the jury's verdict. That, of course, would turn the Rule 29 standard on its head. Rule 29 asks only whether, viewing the evidence in the light most favorable to the government, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. Because that standard was easily met, defendant's Motions should be rejected.

## II. SUMMARY OF RELEVANT TRIAL EVIDENCE

At its case-in-chief at trial, the government called eight witnesses and introduced approximately 140 exhibits into evidence, including disbarment orders, engagement agreements, appointment of representative forms, fee petitions, audio recordings of court proceedings, and bank records. As set forth below, that evidence established beyond a reasonable doubt that defendant executed a scheme by which he knowingly and willfully, and with the intent to defraud, falsified, concealed, and covered up by trick, scheme, and device from the SSA that he had been disbarred by the State Bar of Arizona and several federal courts for misconduct, that this information was material to SSA, and that defendant caused the use of interstate wires in furtherance of the scheme.

1. Evidence of Defendant's Multiple Disbarments

The jury heard testimony from Nicole Kaseta, Bar Counsel at the State Bar of Arizona, and SSA Office of Inspector General Special Agent Alejandro Ibarra regarding defendant's multiple disbarments. Ms. Kaseta explained that the State Bar of Arizona disbarred defendant in April 2016 for misconduct, and the jury saw the disbarment order, as well as the final order from the Arizona Supreme Court denying his appeal in December 2016. (Exs. 1-3, 16.) Agent Ibarra explained that defendant was reciprocally disbarred from at least five federal courts. Specifically, he was disbarred from the U.S. Court of Appeals for the Armed Forces in December 2016 (Ex. 189), the U.S. Supreme Court in May 2017 (Exs. 13-15), the U.S. Tax Court in April 2017 (Exs. 5-7), the Ninth Circuit Court of Appeals in July 2017 (Ex. 9-12), and the U.S. Court of Appeals for Veteran Claims in September 2017 (Ex. 8). Again, the jury saw the disbarment orders from each of those courts.

2. Evidence that Defendant Knowingly Concealed and Lied About His Disbarments to the SSA

The jury heard and saw all the ways that defendant concealed those disbarments and how he affirmatively lied to the SSA that he had never been disbarred.

First, defendant concealed his disbarment orders from SSA. Stacy Wiesbrock at the SSA Office of General Counsel ("SSA OGC") explained that representatives practicing before SSA were required by SSA regulations to notify SSA immediately if they had been suspended or disbarred. The representative could notify SSA directly and inform SSA that he had been disbarred, which would have allowed SSA to promptly begin its investigation into the basis of the disbarment

and, if the disbarment (as here) was for misconduct, begin procedures to disqualify the representative from continuing to practice before SSA. Ms. Wiesbrock testified that defendant did not his disbarment to the SSA.

Second, defendant concealed his disbarment from the claimants he represented. At trial, C.W. and G.M. testified that they believed defendant was a licensed attorney from his website, his office sign (Ex. 134), and highway advertisement. They also signed contracts with the defendant that would entitle him to a portion of their SSA benefits. The jury heard testimony from C.W. and G.M., as well as from Agent Ibarra, and saw that those contracts listed defendant as an attorney, after he had been disbarred from the only state bar to which he was admitted. (See, e.g., Exs. 32, 26.) And C.W., G.M., and J.G. testified that defendant never told them that he had been disbarred for misconduct, and that they would not have hired defendant if they had known that he had been disbarred for misconduct.

Third, defendant affirmatively misrepresented that he had never been disbarred to the SSA. SSA Claims Technical Expert Anna Ponso explained that a representative was required to submit forms to SSA authorizing him to represent claimants and be paid for his services. The jury saw that the forms asked the representative to answer yes or no to a simple question: "I am now or have previously been disbarred or suspended from a court or bar to which I was previously admitted to practice as an attorney." As Agent Ibarra testified, and the jury saw, defendant checked "no" on those forms after he had been disbarred in connection with approximately 65 claimants. (See Ex. 157 (summarizing forms), 158 (same).) And defendant checked "no" on

those forms after he had been disbarred by five federal courts in connection with approximately 28 of those claimants. (Id.) The jury saw that on one form, defendant affirmatively said he was in good standing before the State Bar of Arizona, even though he had been disbarred four years earlier from that exact bar. (Ex. 130.) He signed each of those forms under penalty of perjury, attesting that the information was true. (See, e.g., Exs. 23, 28, 33, 37, 41, 45, 124). And he submitted forms to SSA by fax, with a fax cover page stating that he was admitted to practice before the U.S. Supreme Court and the U.S. Tax Court after he had been disbarred from both of those courts. (Ex. 28.)

Finally, the jury saw that defendant lied on SSA forms that he had never been disbarred even after personally attesting that he would not knowingly make false statements to SSA, that failure to comply with SSA laws and rules relating to representation could result in disqualification from practicing as a representative before SSA, and that failure to comply with SSA laws and rules could result in criminal or civil punishment. (See Exs. 128, 130.) But after making those attestations, defendant still went on to falsely claim that he had never been disbarred. (Id.) And even after the SSA notified defendant that they were seeking to disqualify him for his lies, defendant continued to falsely represent that he had never been disbarred. (Exs. 132, 130.)

Defendant's scheme, during which he falsely stating he had never been disbarred in connection with approximately 65 claimants, resulted in him receiving more than $100,000 in payments from the benefits the SSA paid to those claimants. (Ex. 158.) The jury heard from Agent Ibarra that Count Six charged the false statement scheme

that defendant orchestrated against SSA, and Counts One through Five charged specific executions or transactions that were a part of the scheme. (Ex. 157.) With respect to Counts One through Five, Agent Ibarra also walked the jury through the false statements that defendant made to SSA stating that he had never been disbarred, in connection with the charged transactions (Exs. 24, 28, 33, 37, 41, 157.) Agent Ibarra also explained that defendant made each of the specific misrepresentations in Counts One through Five after he had been disbarred by multiple courts.

3. Evidence That Defendant's Concealment and False Statements Went to Essential Aspects of the Transaction and Had the Capacity to Influence the SSA's Actions and SSA's Parting with Money

Ms. Weisbrock and Ms. Ponso explained the significance of defendant's concealment of and lies to the SSA about his disbarments.

First, Ms. Ponso testified that if an attorney representative disclosed on an SSA form that he had been disbarred, that disclosure would cause the SSA field office to notify the SSA OGC. Ms. Weisbrock testified that this notification would cause SSA OGC to initiate an investigation into the reasons for the disbarment. If SSA OGC determined that the disbarment was due to misconduct, SSA OGC would initiate disqualification proceedings. Thus, if defendant had disclosed that he had been disbarred, SSA would have sought to disqualify him from representing claimants before SSA. Ms. Weisbrock also explained that disqualification was the only possible outcome under SSA rules for a misconduct-related disbarment.

Second, Ms. Weisbrock testified that representatives have a duty to be truthful in their dealings with the agency. If SSA had known defendant was lying on its forms that he had not been disqualified,

Ms. Wiesbrock testified that the SSA could have sought to suspend or disqualify him from practicing before the SSA on account of those false or misleading statements. Ms. Weisbrock also explained that the SSA in fact moved to sanction and disqualify defendant in 2017 after it learned that he had been disbarred for misconduct. (Ex. 133.) And the SSA in fact moved to sanction and disqualify defendant in 2019 after it learned that he had been lying on SSA forms that he had never been disbarred. (Ex. 132.)

Ms. Wiesbrock testified that even if defendant was still in good standing with one court, or if he disagreed with or was challenging his disbarments, he was still required to truthfully disclose on SSA forms that he had been disbarred. This question, she explained, was essential to helping SSA determine whether the representative was ethically fit or had the necessary character to practice before the SSA. Ms. Ponso also explained that if a representative had been truthful on SSA forms and disclosed that he had been disbarred, the form would have been automatically flagged to the SSA OGC. And Ms. Weisbrock explained that disqualification proceedings could have commenced faster if that had occurred. Ms. Weisbrock also explained that if SSA OGC had timely known that defendant had misrepresented that he had never been disbarred on more than 65 SSA forms in connection with more than 65 claimants, that SSA OGC could have moved to sanction defendant for that conduct, and could have expedited disqualification proceedings. Finally, Ms. Weisbrock testified that if defendant had truthfully stated that he had been disbarred for misconduct on SSA forms that required him to explain the circumstances of any disbarments, that admission would have made it

easier and faster for the SSA to disqualify defendant from representing SSA claimants.

4. Evidence That Defendant Used an Interstate Wire Communication to Carry Out the Scheme

The jury saw that defendant was paid by check from SSA through the U.S. Treasury with respect to the claimants he represented before the SSA and Agent Ibarra walked through the specific check payments defendant received in connection with Counts One through Five. (Exs. 26, 30-31, 35, 39, 43; see also Exs. 47, 51, 55, 58, 62, 66, 70, 75, 79, 83, 88, 92, 96, 98, 101, 104, 108, 113, 118, 158.)

Bank of America Senior Vice President Greg Nixon then explained how those checks were fulfilled using electronic wire communications so that defendant could realize the value of those checks and receive the payment in his bank account. Specifically, Mr. Nixon explained that the checks charged in Counts One and Two were deposited in person at defendant's Bank of America branch in California to his Bank of America bank account. Mr. Nixon and Agent Ibarra also explained that the checks charged in Counts Three through Five were mailed to defendant's home in California, and then deposited by mobile deposit into defendant's Bank of America bank account. The jury saw that defendant endorsed each of those checks, which gave Bank of America permission to process the checks, and presented them to Bank of America so that he could receive the money that was promised in the checks he received. Mr. Nixon explained that those checks were processed at a data processing center in Texas and the data to process the checks was sent from California to Texas using electronic communications.

**III. LEGAL STANDARD**

"The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." United States v. Rocha, 598 F.3d 1144, 1153 (9th Cir. 2010). Courts may not set aside a jury's verdict and enter a judgment of acquittal unless no reasonable juror could have voted to convict. Rule 29 "does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319-20 (1979) (emphasis in original) (internal quotation and citations omitted). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

In addition to viewing all evidence in the light most favorable to the government, "the reviewing court must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict." United States v. Ramos, 558 F.2d 545, 546-47 (9th Cir. 1977).

For those reasons, even "when 'faced with a record of historical facts that supports conflicting inferences,' a reviewing court 'must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" United States v. Del Toro-Barboza, 673 F.3d 1136, 1143 (9th Cir. 2012) (quoting Jackson, 443 U.S. at 326). A jury's determination should be upset

only on those "rare occasions in which a properly instructed jury may convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc) (cleaned up).

## IV. ARGUMENT

### A. A Reasonable Juror Could Find Defendant Guilty of the Wire Fraud and False Statement Counts

In Counts One through Five, the indictment charged that defendant executed a scheme to defraud the SSA from April 2016 to May 2021 by falsely claiming on SSA forms that he had never been disbarred, in violation of 18 U.S.C. § 1343. As set forth in the jury instructions, the government was required to prove: (1) defendant participated in or devised a scheme or plan to defraud for the purpose of obtaining money through false or fraudulent representations; (2) the statements made as part of the scheme went to essential aspects of the transaction and were material - that is, they had a natural tendency to influence, or were capable of influencing, the SSA to part with money or property; (3) defendant acted with the intent to defraud, that is the intent to deceive and cheat; and (4) defendant caused, or could reasonably foresee, the use of an interstate wire communication to carry out an essential part of the scheme. After being instructed on the elements, the jury was not able to return a unanimous verdict on Counts One through Five.

In Count Six, the indictment charged that defendant falsely claimed from April 2016 to May 2021 on SSA forms that he had never been disbarred, in violation of 18 U.S.C. § 1001(a)(1). As set forth in the jury instructions, the government was required to prove: (1) defendant falsified, concealed, or covered up the fact that he had

been disbarred by the State Bar of Arizona or at least one court by trick, scheme, or device; (2) the fact of his disbarments was material to the activities or decisions of SSA -- that is, it had a natural tendency to influence, or was capable of influencing, the SSA's decisions or activities; (3) defendant knowingly and willfully falsified, concealed, or covered up the material fact; and (4) the material fact was within the jurisdiction of SSA. The government did not need to prove that the false statements was capable of influencing the SSA to part with money for Count Six. After being instructed on the elements, the jury returned a verdict of guilty on Count Six.

The evidence at trial provided ample basis for a rational juror to convict defendant of Counts One through Five, and of Count Six. For all counts, the evidence showed that (a) defendant had been disbarred in 2016 by the State Bar of Arizona, and was reciprocally disbarred by multiple federal courts in 2016 and 2017; (b) defendant did not immediately disclose his disbarment (and each reciprocal disbarment) to the SSA, as required under SSA rules; (c) instead falsely claimed on SSA forms that he had never been disbarred in connection with his representation of approximately 65 claimants over more than five years; and (d) defendant's false statements delayed the SSA's initiation of proceedings to disqualify defendant from representing claimants by more than a year, made those proceedings more difficult, and provided independent grounds for the SSA to seek his disqualification. And for Counts One through Five, the evidence also showed that defendant caused the use of, or could reasonably foresee, that Bank of America would use electronic communications to process the checks defendant deposited with his SSA payments.

Defendant's Motions focus on two elements for all Counts that were purportedly deficient at trial: (1) whether the false statements were material to the SSA's parting with money (Counts One through Five) and SSA's activities or decisions (Count Six), and (2) whether defendant acted with the intent to defraud (Counts One through Five) and willfully (Count Six) in making the false statements. Because defendant's challenges overlap with respect to the Wire Fraud Counts and the False Statement Count, they are addressed together below. Construing the evidence in the light most favorable to the government, a juror had ample evidence to rationally conclude that defendant's statements were capable of influencing (and in fact did influence) the SSA's parting with money and SSA's actions, and that defendant acted with the intent to defraud and willfully.

1. A Reasonable Juror Could Find that Defendant's False Statements Were Material

The jury was instructed that for a false statement to be material, representations need only have the intrinsic ability, propensity, or capacity to influence or affect a decision; the government need not prove actual reliance upon the defendant's misrepresentations or any economic loss.

As discussed above, Ms. Weisbrock and Ms. Ponso's testimony provided evidence from which a rational factfinder could readily conclude that defendant's false statements that he had never been disbarred, and his concealment of his disbarment for misconduct, had the capacity to influence SSA's decision to part with money as required for Counts One through Five and its decisions more generally as required for Count Six.

Among other things, Ms. Weisbrock testified that if an attorney notified the SSA that he had been disbarred, that information would cause the SSA OGC to initiate an investigation. If that investigation determined that the attorney had been disbarred due to misconduct, the SSA would initiate disqualification proceedings. Defendant's concealment of his disbarment for misconduct delayed the SSA's initiation of disqualification proceedings. She explained that that if SSA had known of defendant's disbarment earlier, it could have commenced disqualification proceedings earlier, and that disqualification was the only possible remedy if the SSA established that a representative had been disbarred for misconduct. Similarly, Ms. Weisbrock testified that if SSA had known defendant was representing so many claimants and lying on so many forms, it could have moved more quickly to disqualify him. In short, a rational juror could find that if SSA had known the truth, it could have disqualified and stopped paying defendant earlier.

In addition to the above, Ms. Weisbrock testified about other SSA decisions that could have been affected by defendant's misrepresentations. She explained that if the SSA had known that defendant was lying about his disbarment, it could have brought additional sanctions, including for his violating his duty of candor in his dealings with the agency.

The evidence also showed that defendant's lies about his disbarment in fact affected the SSA's actions. Indeed, the SSA sought to disqualify defendant for both his lies and for the conduct he was lying about. (Exs. 132, 133.) Construing this evidence in the light most favorable to the government, this testimony is sufficient to allow a rational juror to conclude that defendant's

false statements had the capacity to influence the SSA's decisions and activities, as well as its parting with money.

Each of defendant's arguments regarding materiality was either fully presented to and rejected by the jury, or is irrelevant to the materiality analysis.

First, defendant rehashes his argument that his lies were not material because SSA representatives can continue practicing before the SSA until a final disqualification decision is rendered. (Prior Motion at 8, 11, 15; Motion at 7-17.) But the trial was not about defendant's ability to practice before the SSA; it was about defendant's material misrepresentations to the SSA. It is undisputed that, pursuant to SSA procedures and regulations, defendant could continue practicing before the SSA until the SSA reached a final disqualification decision. But none of those SSA procedures and regulations permitted defendant to affirmatively lie to the SSA on form after form in an effort to avoid disqualification.

Defendant repeatedly characterizes Ms. Weisbrock's testimony as "devastating" or as containing "admissions." (See, e.g., Prior Motion at 8; Motion at 10-12.) But Ms. Weisbrock's testimony simply established that even if defendant was still challenging his disbarment, and even if defendant had not yet been formally disqualified by the SSA, his lies on SSA forms were still material because SSA otherwise could have sought remedies like sanctions or disqualification, or could have sought those remedies faster, if defendant had told the truth that he was disqualified for misconduct.

Second, defendant's reliance on his valid admission to one court is overblown. (Prior Motion at 8-9, 13, 15; Motion at 18.) Defendant made this argument to the jury, and the jury rejected it in

finding defendant guilty of Count Six, and by virtue of at least one juror wishing to find defendant guilty of Counts One through Five. Defendant cites to the SSA 1699 form, which asks (1) under the section titled "Section II: Your Representational Standing": "Are you currently in good standing and admitted to practice law before the U.S. Supreme Court, a U.S. federal, state, territorial . . . or a member of a state bar if that membership carries with it the authority to practice law in that state?"; and (2) under the section titled "Section VI: Attestations and Questions for Representation": "Have you ever been . . . Disbarred or suspended from a court or bar to which you were previously admitted to practice as an attorney?". (Ex. 130.) Defendant argues that because he remained admitted to one court, that he could answer yes in both places and his disbarment in other courts was "by definition immaterial." (Prior Motion at 9, 15; Motion at 18.)

Construing the evidence in the light most favorable to the government, a rational juror could have concluded that defendant's argument was nonsensical on its face and that retaining admission to one court would not permit him to affirmatively lie about his other disbarments. As an initial matter, on the SSA forms where defendant checked that he was in good standing in one court, he was also required to list one of the courts where he was in good standing. (See Ex. 130.) Tellingly, defendant did not list the U.S. Court of Appeals for the Federal Circuit, which he now cites as the court where he remained in good standing. (Ex. 1004.) Instead, the jury saw that defendant listed the State Bar of Arizona, where he had already been disbarred. (Ex. 130.) A juror could have easily rejected defendant's argument that he believed he only needed to be

admitted to practice in one jurisdiction based on defendant's own actions.

But more importantly, as Ms. Weisbrock explained, a representative must answer both questions truthfully. Even if a representative remained in good standing in one court, whether that representative had been disbarred for misconduct was extremely important to SSA's determination of whether the representative was ethically fit to practice before the SSA. Ms. Weisbrock also explained that the requirement for a representative to be of good character and have not been disbarred for misconduct is also specifically outlined in SSA's regulations.

Finally, the cases defendant cites do not change the sufficiency of the evidence in this case.

Defendant cites United States v. Service Deli Inc., 151 F.3d 938, 942 (9th Cir. 1998) for the proposition that this Court may find that a false statement was not material as a matter of law. (Prior Motion at 14-15; Motion at 19.) But Service Deli explained that "whether a false statement is material to an agency decision is a mixed question of fact and law typically resolved by juries." Id. at 941. It also reiterated that materiality in the context of 18 U.S.C. § 1001 turns on the intrinsic capabilities of the false statement, stating that "the false statement need not have actually influenced the agency." Id. In Service Deli, the Ninth Circuit found material a representation where testimony established that if defendant had admitted to the truth of the underlying false representation, the agency would have forwarded the information to its legal counsel for further investigation, even if the investigation would not have revealed any wrongdoing. Id. The same is true here. Ms. Ponso

clearly stated that if defendant had truthfully disclosed on the SSA forms that he had been disbarred, the forms would have been referred to SSA OGC for further investigation. And Ms. Weisbrock stated that because the investigation would have revealed that defendant was disbarred for misconduct, it would have resulted in his disqualification.

Defendant also overstates the significance of United States v. Talkington, 589 F.2d 415 (9th Cir. 1978).[2] (Motion at 22.) In Talkington, the government presented sufficient evidence of materiality for some statements, but insufficient evidence of materiality for other statements. Id. at 417. But the district court instructed that the jury could find defendant guilty if it found that he made any one of the false statements. Id. The Ninth Circuit held that the jury instruction made it impossible to affirm the conviction because it was not clear which statement(s) formed the basis for the jury's guilty verdict. Id. Here, the government has

[2] Defendant also cites United States v. Henderson, 318 F. Supp 3d 1221 (E.D. Wa. 2018), but does not explain why he believes Henderson supports his materiality argument. (Motion at 20.) To the extent defendant makes a materiality argument regarding Henderson, it is not binding on this Court. But also, the Henderson court noted that the parties did not focus on materiality in briefing and arguments, but found that the evidence was insufficient to support materiality because the defendant was already being paid as if he were 100 percent disabled. Id. at 1242. It explained, without any citation, that because the VA did not rely on the false statements in making its determination, that the false statements were not material. Id. But that finding in Henderson is directly contradicted by Ninth Circuit precedent in Service Deli, and United States v. Lindsey, 850 F.3d 1009 (9th Cir. 2017), which both clearly held that a misrepresentation can be material without inducing any actual reliance. Service Deli, 151 F.3d at 941; Lindsey, 850 F.3d at 1015-16. The same clear assertion that the government need not prove actual reliance to establish materiality has been reiterated in the Ninth Circuit Model Jury Instruction, as well as in United States v. Jesenik, 152 F.4th 924 (9th Cir. 2025).

established that all of defendant's misrepresentations that he had never been disbarred were material, and none of the other issues in Talkington are relevant to defendant's case.

A rational juror could easily find that defendant's false statements were material.

2. A Reasonable Juror Could Find that Defendant Acted Willfully and With Intent to Defraud

To prevail on Counts One through Five, the government was required to prove, among other elements, that defendant acted with the intent to defraud, that is, with the intent to deceive and cheat. For Count Six, the government was required to prove, among other elements, that defendant knowingly and willfully falsified, concealed, or covered up the fact of his disbarments. The jury was instructed that this meant that the government had to prove that "defendant acted deliberately and with knowledge both that the fact was falsified, concealed, or covered up and that his conduct was unlawful."

The government presented significant evidence from which a rational factfinder could conclude that defendant acted knowingly and willfully. As discussed above, defendant, as a former lawyer, signed each SSA form under penalty of perjury. He also specifically attested on many forms that he would not make false or misleading statements to SSA, acknowledged that if he failed to comply with SSA rules and regulations about representation that he could be disqualified, and acknowledged that if he failed to comply with SSA rules and regulations, he could be criminally or civilly punished. (See Ex. 128-130.) The evidence at trial also showed that defendant knew what he was doing was wrong because SSA told him that it was.

SSA told defendant in 2017 that it was seeking to disqualify him for being disbarred for misconduct. (Ex. 133.) But defendant continued to represent on SSA forms that he had never been disbarred or suspended. Then, in 2019, SSA told defendant that it was sanctioning and disqualifying him for lying about his disbarment on SSA forms. (Ex. 132.) But again, defendant did exactly that again in 2020 and said he had never been disbarred. (Ex. 130.) Defendant knew that his statements were false and knew that what he was doing was wrong.

In addition to each of the above reasons, a rational juror could also conclude that defendant acted with the intent to defraud, or the intent to deceive and cheat, because he was also intentionally inconsistent. The jury saw that defendant was disbarred from the Ninth Circuit in July 2017 and ordered to withdraw from his other cases before that court because of his disbarment, and that defendant complied with that order and withdrew from his cases in September 2017. (Ex. 12.) In other words, defendant was complying with one disbarment order in the Ninth Circuit, while simultaneously claiming he had never been disbarred to the SSA so that he could continue being paid. It was no coincidence that each of the SSA forms defendant lied on were required for payment.

Defendant did not contest much of this evidence at trial. Indeed, in his own opening statement, defendant acknowledged that he knew he was disbarred, disagreed with the disbarment, and so continued to practice law and continued to be paid.

Contrary to the evidence presented at trial, defendant now argues that he did not act willfully because he acted through mistake, negligence, or good-faith belief. (Prior Motion at 17; Motion at 24.) Defendant already presented many of his arguments at

trial, and the jury rejected them. First, defendant claims that he lacked motive to deceive. (Prior Motion at 12; Motion at 24.) But motive is not an element of Count Six.

Second, defendant claims that he inadvertently failed to update his answers on the SSA forms. (Motion at 25.) This argument is belied by the evidence at trial. As discussed, defendant never disclosed to SSA that he had been disbarred, continued to affirmatively answer on SSA forms that he had never been disbarred, and then signed each SSA form under penalty of perjury. Defendant was also taking affirmative steps to comply with his Ninth Circuit disbarment order at the same time he was affirmatively representing to SSA that he had never been disbarred. And as discussed, defendant continued to represent that he had never been disbarred even after he received SSA's notice of intent to sanction and disqualify him for falsely representing that on SSA forms that he had never been disbarred. (See Exs. 132, 130.)

Third, defendant claims that he had a good faith belief that his Arizona disbarment order was not final. (Motion at 21, 26.) The exhibits defendant cites and the reasons he now argues in his Motion were excluded from trial. (Motion at 26.) But a juror also could have easily rejected any suggestion that defendant believed his Arizona disbarment order was not final based on the evidence at trial. Agent Ibarra and defendant's wife, Star Moffatt, testified that defendant represented himself in connection with his Arizona disbarment order and the other five reciprocal disbarment orders. Defendant also filed briefs in some of those cases challenging the disbarment orders, but all of those appeals and briefs were denied and none of his disbarment orders were overturned. The jury saw that

defendant's Arizona Supreme Court order denying his appeal was final in December 2016. (Ex. 3.) The jury also saw that defendant complied with the Ninth Circuit's order that he withdraw as counsel of record as a result of his disbarment. Defendant also told the jury in opening statement that he was disbarred, but disagreed with that disbarment, so he continued practicing. A juror could have easily rejected defendant's good faith argument, or still found that defendant acted willfully and with the intent to defraud, for any of these reasons.

Defendant has also overstated Agent Ibarra's testimony. (Motion at 27.) He circularly argues that if Agent Ibarra did not know SSA regulations that would allow defendant to practice until he was formally disqualified by SSA, the government cannot prove willfulness. (Id.) But at trial, Agent Ibarra testified he specialized in SSA criminal investigations, that his SSA division (the Office of Inspector General) operated independently of SSA's internal civil disqualification procedures (run by SSA OGC), and that his investigations were conducted and charged in consultation with the U.S. Attorney's Office. For the reasons discussed above, defendant's affirmative false statements charged in this case are separate from his ability to continue practicing before SSA until he was formally disqualified, and defendant's argument falls flat.

Fourth, defendant's cited case again does not change the sufficiency of the evidence of willfulness. (Motion at 21.) In United States v. Henderson, the defendant was convicted at trial for falsely representing to the VA, including through a doctor's note with an incorrect diagnosis, that his eye condition caused him to be permanently blind. 318 F. Supp. 3d at 1242. The Henderson court

explained that there was, among other things, no evidence that the defendant knew the diagnosis was incorrect or that his reporting of the diagnosis was unlawful. (Id.) It also stated that the government in Henderson presented no evidence that defendant acted willfully and the jury would have to rely on speculation, rather than reasonable inferences, to satisfy the intent element and granted the defendant's judgment of acquittal. Id. But the facts in Henderson were distinguishable. For the reasons explained above, the jury was presented with testimony and documents, as well as defendant's own opening statement, that defendant knew he had been disbarred and his statements were false, but that he nonetheless continued to sign those misrepresentations under penalty of perjury even after SSA moved to sanction and disqualify him for the exact conduct that he continued to do while acting inconsistently in the Ninth Circuit. Here, a rational juror could find through reasonable inferences that defendant acted willfully and with the intent to defraud.

Finally, defendant argues that because the jury did not reach a unanimous verdict on the Wire Fraud Counts (Counts One through Five), it could not rationally have found that defendant acted knowingly and willfully with respect to False Statement Count (Count Six). (Motion at 27-28.) But defendant ignores that a conviction for wire fraud and a conviction for false statement by scheme have different elements. The jury's inability to reach a unanimous verdict on the wire fraud counts could have turned on a different element for wire fraud that was not required to convict defendant of Count Six. And the fact that the jury could not a reach a unanimous verdict on Counts One through Five, but did reach a unanimous verdict on Count Six, coupled with the insightful jury notes during deliberations,

suggests that the jury carefully considered the evidence for each count individually and rendered a verdict based on that analysis.

Construing the evidence presented at trial in the light most favorable to the government, a rational juror could easily find that defendant's false statements were made knowingly and willfully for Count Six, and with the intent to defraud for Counts One through Five.

**B. Defendant's Remaining Arguments are Improper and Should be Rejected**

Defendant's remaining arguments pertain to evidence and topics not presented to the jury and not properly raised in a Rule 29 motion. (Motion at 28-46.) Specifically, defendant argues that he should receive relief because of claimed discovery violations, claimed Brady and Giglio violations, his medical issues, and the exclusion of evidence regarding the propriety of his Arizona State Bar disbarment and whether then-Acting SSA Commissioner Nancy Berryhill was serving legally in her role. (Id.) But Rule 29 focuses on the sufficiency of evidence presented to the jury and whether, from that evidence, a rational juror could convict defendant of the charged crime. Jackson, 443 U.S. at 319-20. None of these topics were presented to the jury, and none are relevant to any of the elements of the Wire Fraud Counts or the False Statement Count. The message from the jury in this case should not be disturbed based on improper collateral matters.

Additionally, the parties have fully briefed or argued each of these topics to the Court (see Dkts. 175, 198, 202, 203, 204, 205, 206, 209, 213, 215-1, 220, 223, 229, 231, 260, 262, 264, 265, 266, 273, 277) both before and during trial, and the Court has already

rejected each of these arguments or excluded the evidence at issue (see Dkts. 227, 252, 261, 263, 268, 269). Defendant's Motions provide no basis for disturbing the Court's prior rulings.

## V. CONCLUSION

For the foregoing reasons, defendant's Motions should be denied.