UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:21-CR-00335-JAK-1 | Date | February 19, 2026 |
| Title | United States v. Jeffrey Moffatt | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |

| M. Lindaya | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANT JEFFREY DEAN MOFFATT'S AMENDED AND SUPPLEMENTAL MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29, FEDERAL RULES OF CRIMINAL PROCEDURE (DKT. 302)**

## I.      Introduction

Jeffrey Moffatt ("Defendant") was charged through an Indictment with five counts of wire fraud, in violation of 18 U.S.C. § 1343 ("Counts 1–5"), and one count of false statements by trick, scheme, or device, in violation of 18 U.S.C. § 1001(a)(1) ("Count 6"). Dkt. 1. A five-day jury trial on these charges commenced on October 7, 2025. Dkts. 285, 286, 306, 292, 294. Defendant represented himself at the trial. *See* Dkt. 188. The Government rested on October 10, 2025, and Defendant rested the same day. Dkt. 292. On October 13, 2025, Defendant filed a Renewed Rule 29 Motion. Dkt. 290. On October 15, 2025, the jury returned a guilty verdict on Count 6. Dkt. 307 at 1. The verdict form stated that the jury was deadlocked as to Counts 1–5. *Id.* at 2. The Government requested that the Court declare a mistrial as to Counts 1–5. *Id.* The Government's request was granted, and a mistrial was declared as to Counts 1–5. *Id.*

Defendant was permitted to file an amended Renewed Rule 29 Motion (*id.*), which would supersede the Renewed Rule 29 Motion filed at Dkt. 290. Dkt. 299. On October 28, 2025, Defendant filed an Amended and Supplemental Motion for Judgment of Acquittal Pursuant to Rule 29, Federal Rules of Criminal Procedure (the "Motion"), which incorporated the previous motion by reference. Dkt. 302. On November 18, 2025, the Government filed an Amended Opposition to the Motion (the "Opposition"). Dkt. 331. On November 26, 2025, Defendant filed a Reply in Support of the Motion (the "Reply"). Dkt. 332.[1]

In accordance with Local Civil Rule 7-15, which applies in this criminal action pursuant to Local Criminal Rule 57-1, it has been determined that the Motion will be decided without oral argument, and it has been taken under submission. For the reasons stated in this Order, the Motion is **DENIED**.

---

[1] Defendant's Reply in Support of the Motion was filed twice in successive docket entries. Therefore, the latter entry (Dkt. 333) has been stricken.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:21-CR-00335-JAK-1 | Date | February 19, 2026 |
| Title | United States v. Jeffrey Moffatt | | |

**II.      Analysis**

      A.      Rule 29 Legal Standards

Federal Rule of Criminal Procedure 29 provides that, after a jury guilty verdict, a "court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). Similarly, "[i]f the jury has failed to return a verdict, the court may enter a judgment of acquittal." *Id.* "Courts reviewing a motion for judgment of acquittal under Rule 29(c) apply the same test as they do in evaluating a challenge to the sufficiency of the evidence." *United States v. Richardson*, No. 8:19-CR-00182, 2021 WL 4459363, at *1 (C.D. Cal. Sep. 29, 2021) (citing *United States v. Ladum*, 141 F.3d 1328, 1337 (9th Cir. 1988)). Fed. R. Crim. P. 29(a) provides that the entry of a judgment of acquittal is appropriate only "if the evidence is insufficient to sustain a conviction . . . ." *United States v. Tisor*, 96 F.3d 370, 378 n.5 (9th Cir. 1996).

"The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." *United States v. Rocha*, 598 F.3d 1144, 1153 (9th Cir. 2010). Under the applicable standards, a motion is granted only when, viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in its favor, it is shown that no reasonable juror could find the defendant guilty beyond a reasonable doubt. *United States v. Leos-Maldonado*, 302 F.3d 1061, 1063 (9th Cir. 2002). "[I]n a case involving factual disputes and credibility determinations," the court is to " 'presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *United States v. H.B.*, 695 F.3d 931, 935 (9th Cir. 2012) (quoting *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010)).

      B.      Counts 1–5, 18 U.S.C. § 1343

         1.      Legal Standards

18 U.S.C. § 1343 provides that it is a felony if a person who, "having devised or intending to devise any scheme or artifice to defraud, . . . transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice . . . ."

To establish that a person committed wire fraud in violation of 18 U.S.C. § 1343, the Government must prove each of the following four elements beyond a reasonable doubt:

> First, the defendant knowingly participated in or devised a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises; Second, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person or entity to part with money or property; Third, the defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and Fourth, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

Committee on Model Criminal Jury Instructions, *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* 15.35 (2025), https://www.ce9.uscourts.gov/jury-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:21-CR-00335-JAK-1 | Date | February 19, 2026 |
|---|---|---|---|
| Title | United States v. Jeffrey Moffatt | | |

instructions/node/1048 ("*Model Criminal Jury Instructions*") (cleaned up).

> 2.    Application

As noted, Defendant was charged through the Indictment with five counts of wire fraud, in violation of 18 U.S.C. § 1343. Dkt. 1. A review of the trial evidence shows that it was sufficient such that a judgment of acquittal as to each of the five counts of wire fraud is unwarranted under the applicable legal standards. Thus, when viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in its favor, it has not been shown that no reasonable juror could find the Defendant guilty beyond a reasonable doubt. *Leos-Maldonado*, 302 F.3d at 1063.

The five counts were based on Defendant's continued representation of persons making claims to the Social Security Administration ("SSA") after his disbarment by the State Bar of Arizona and subsequent reciprocal disbarments by the United States Tax Court, the United States Court of Appeals for the Ninth Circuit, and the United States Court of Appeals for Veteran Claims. *Id.* ¶¶ 2–5, 13. The Indictment charged that, in 65 matters in which Defendant represented persons making such claims for the denial of benefits by the SSA, Defendant failed to disclose to the SSA on the required form, that as of the time each claim was made, he had been disbarred by one or more of the aforementioned courts. *Id.* ¶¶ 13–14. When a claimant represented by the Defendant prevailed, the "SSA would withhold up to 25%, but no greater than $6,000, of the SSA claimant's past due benefits for payment of all or part of [Defendant's] authorized fee." *Id.* ¶ 9. Defendant's representation in these matters collectively resulted in his receiving as attorney's fees approximately $113,146 of the amounts awarded to his clients. *Id.* ¶ 15. In five of matters, Defendant allegedly used interstate wires to acquire those funds. *Id.* ¶ 16.

> a)    Knowing Participation and Materiality (Elements One and Two)

Defendant does not contend that there was insufficient evidence for a reasonable juror to conclude beyond a reasonable doubt that he knowingly participated in or devised a scheme or plan to defraud. *See* Dkt. 302. As explained in greater detail below, there was also sufficient evidence for a rational juror to conclude that the statements were material. *See* discussion *infra* Section II.C.2.c.

> b)    Intent to Defraud (Element Three)

To satisfy the required showing that Defendant "acted with the intent to defraud," the Government must show beyond a reasonable doubt that the defendant "act[ed] with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions. In other words, a defendant must intend to deceive *and* cheat." *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020). "[I]ntent to defraud may be established by circumstantial evidence." *United States v. Pelisamen*, 641 F.3d 399, 409 (9th Cir. 2011) (quoting *United States v. Rogers*, 321 F.3d 1226, 1230 (9th Cir. 2003).

Defendant argues that he did not act with intent to defraud because at the time that he represented claimants in approximately 65 SSA matters, he had appealed his SSA disqualification, which was not decided adversely to him until January 30, 2024. Dkt. 290 at 8; *see* Ex. 137. So, he contends that he had the right to continue to practice before the SSA until that date. Dkt. 290 at 8. The Government responds that a rational juror could conclude that Defendant acted with the requisite intent because he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:21-CR-00335-JAK-1 | Date | February 19, 2026 |
|---|---|---|---|
| Title | United States v. Jeffrey Moffatt | | |

repeatedly made false statements as to his standing as an attorney on SSA forms that he submitted as required and that were necessary to permit him to receive as his attorney's fees a payment of a portion of the funds recovered by his clients. Dkt. 331 at 22–23. Thus, the Government argues that Defendant intentionally did not disclose his April 19, 2016, disbarment by the State Bar of Arizona, which he was required to do notwithstanding any pending appeal. *Id.* at 23–24; *see* Ex. 2–3.

There was sufficient evidence presented at trial that Defendant failed to inform the SSA of his disbarment by the State Bar of Arizona in 2016. At trial, the Government presented evidence that, from April 2016 to April 2019, Defendant made false representations as to his bar status in 65 SSA matters. *See* Exs. 157–58. On the SSA form that he was required to complete and submit to the SSA upon the commencement of SSA proceedings or to collect his fees, Defendant checked "no" in response to the question whether he "now or [had] previously been [d]isbarred or suspended from a court or bar to which [he] was previously admitted to practice as an attorney." *See, e.g.*, Exs. 28, 33, 37, 41, 45, 158; Dkt. 331 at 7–8. The Government argues that he did so notwithstanding the language on the forms that required that he attest that he would not "knowingly make or present, or participate in making or presenting, false or misleading oral or written statements, assertions, or representations" to the SSA, that "fail[ure] to comply with SSA laws and rules relating to representation" could result in "suspen[sion] or disqualify[cation] from practicing as a representative before SSA," and that "fail[ure] to comply with SSA laws and rules" could result in "criminal[] punishment" or "civil monetary penalties." *See, e.g.*, Exs. 128 at 6–7, 130 at 5–6; Dkt. 331 at 9. Further, the Government presented evidence that the Defendant complied with his disbarment from the Ninth Circuit "while simultaneously claiming he had never been disbarred to the SSA so that he could continue being paid." Dkt. 331 at 23.

Based on the evidence as to Defendant's numerous representations on the SSA forms that he had not been disbarred, a rational juror could infer that Defendant intended to "make false statements or utilize other forms of deception . . . ." *Miller*, 953 F.3d at 1101. A rational juror could also conclude that Defendant did so to deprive the SSA of money by means of that deception because he made the statement that he had not been disbarred on forms that he was required to submit to the SSA to qualify to receive as his attorney's fees a portion of the amounts awarded to his clients. Dkt. 331 at 23.

> c) Interstate Wire Communication (Fourth Element)

The fourth element of wire fraud recognizes that 18 U.S.C. § 1343 "'does not purport to reach all frauds, but only those limited instances' wherein use of a wire 'is a part of the execution of the fraud . . . .'" *United States v. Jinian*, 725 F.3d 954, 960 (2013) (quoting *Kann v. United States*, 323 U.S. 88, 95 (1944)). As the Ninth Circuit has explained:

> One causes use of wire communications where such use can reasonably be foreseen, even though not specifically intended. A wire communication is "in furtherance" of a fraudulent scheme if it is incident to the execution of the scheme, meaning that it need not be an essential element of the scheme, just a step in the plot. For purposes of 18 U.S.C. § 1343, a wire communication cannot be part of an after-the-fact transaction that, although foreseeable, was not in furtherance of the defendant's fraudulent scheme.

*Id.* at 960–61 (cleaned up).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:21-CR-00335-JAK-1 | Date | February 19, 2026 |
| Title | United States v. Jeffrey Moffatt | | |

The Government argues that the evidence at trial established that Defendant "caused the use of, or could reasonably foresee, that Bank of America would use electronic communications to process the checks defendant deposited with his SSA payments." Dkt. 331 at 15. The Government presented evidence that Defendant, in his capacity as a representative of SSA claimants, received payment for his legal fees by a check from the SSA through the U.S. Treasury in connection with Counts 1–5. *See* Dkt. 1; Dkt. 331 at 12; *see, e.g.*, Exs. 26, 30, 25. Bank of America Vice President Greg Nixon testified how each of those checks was deposited into Defendant's Bank of America account in person or by a mobile deposit, and that the corresponding funds were fulfilled by an electronic transmission that ultimately placed the funds into Defendant's account where he could access them. *See* Trial Transcript, October 8, 2025, at 44:24–63:12; Dkt. 331 at 12.

"[T]he mere clearing of a check" may be enough to satisfy the use of interstate wire communication element of wire fraud if "the interstate communication was necessary to complete and conceal [the defendant's] fraud." *Jinian*, 725 F.3d at 964; *see also Kann v. United States*, 323 U.S. 88, 95 (1944) (In the mail fraud context, "it is conceivable that [the mere clearing of a check] alone, in some settings, would be enough.").[2]  If, however, the check clearing represents "little more than post-fraud accounting among the potential victims of the various schemes, and the long-term success of the fraud did not turn on which of the potential victims bore the ultimate loss," it alone cannot satisfy the interstate wire communication element. *See Schmuck v. United States*, 489 U.S. 705, 714 (1989).

In *Jinian*, based on the defendant's representations to his employer's finance manager, the employer began issuing checks to the defendant that in total exceeded his annual salary. *Jinian*, 725 F.3d at 959. The Ninth Circuit found the clearing of the checks was sufficient to satisfy the use of wires element. *Id.* The execution of the defendant's on-going scheme "depended upon each check successfully clearing . . . because, if either bank had been left holding the dishonored check, [the defendant's] scheme would have been discovered. As long as [his employer] was the victim of his crime, [the defendant] could cover his tracks by giving false assurances to [his employer's finance manager]." *Id.* at 963. Even if each check was viewed "as an individual, discrete scheme," "the mere clearing of a check is enough" because the defendant relied on a series of "multiple, smaller-denomination checks" "to conceal his transactions entirely from detection by [his employer] or structure the transactions in a manner that gave them the appearance of regular or necessary business expenditures." *Id.* at 964.

Viewing the trial evidence in the light most favorable to the Government, it was sufficient for a rational juror to conclude that the check processing was "incident to the execution of the scheme" to defraud the SSA. *Id.* at 960. Defendant was entitled to direct payments from the SSA so long as he was not sanctioned or disqualified. *See* Trial Transcript, October 8, 2025, at 193:22–194:3; Exs. 132–33. Accordingly, as in *Jinian*, a rational juror in this case could conclude that Defendant's alleged scheme relied on his continued misrepresentations to the SSA regarding his disbarment and his corresponding ability to continue receiving and clearing the checks that were sent to him. *Jinian*, 725 F.3d at 963–64.

---

[2]  Other circuits have similarly found the clearing of a check sufficient to establish wire fraud. *See, e.g., United States v. Kitts*, 27 F.4th 777, 787–88 (1st Cir. 2022) (interstate wire transfer to deposit a check amounted to wire fraud because "the interstate wiring of $125,000 . . . was an integral part of the fraudulent scheme . . . as the fraud was not complete until at least when Kitts received the stolen funds into her own . . . account."); *United States v. Keller*, 395 F. App'x 912, 915 (3d Cir. 2010) ("[E]ven if [the defendant's] account was credited immediately upon depositing any check, if the clearing process ultimately failed, his account would be debited and the fraud would be for naught.") (internal quotation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:21-CR-00335-JAK-1 | Date | February 19, 2026 |
| Title | United States v. Jeffrey Moffatt | | |

Further, Mr. Nixon testified that a check does not independently hold value "without transacting it through a financial institution." Trial Transcript, October 8, 2025, at 44:24–45:2. Accordingly, a rational juror could conclude that the wire transfer was necessary to complete the fraud because it was the only means by which Defendant obtained control over the money at issue. *See United States v. Rude*, 88 F.3d 1538, 1544–45 (9th Cir. 1996) (upholding defendants' wire fraud convictions not predicated on the initial wiring of funds out of the investor's account but rather subsequent transfers because "their fraud was not complete until the $10 million deposited in [the investor's account] was within their complete control.").

*          *          *

For these reasons, the evidence presented at trial was sufficient to preclude a judgment of acquittal as to the wire fraud charges pursuant to 18 U.S.C. § 1343. Accordingly, the Motion is **DENIED** as to Counts 1–5. They can be presented at a new trial.

    **C.**    **Count 6, 18 U.S.C. § 1001(a)(1)**

        **1.**    <u>Legal Standard</u>

A violation of 18 U.S.C. § 1001(a)(1) occurs if the following elements are established: "(1) [the defendant] falsifies, conceals, or covers up by any trick, scheme, or device a material fact"; (2) the material fact was "within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States"; (3) the defendant "knowingly and willfully" falsified concealed, or covered up the fact; and (4) the falsified, concealed, or covered up fact was material to the decisions or activities of the governmental agency. *See* 18 U.S.C. § 1001(a)(1); *United States v. Peterson*, 538 F.3d 1064, 1073 (9th Cir. 2008).

        **2.**    <u>Application</u>

In Count 6 of the Indictment, Defendant was charged with violating 18 U.S.C. § 1001(a)(1). Dkt. 1. A review of the trial evidence as a whole and in the light most favorable to the Government, and in which all reasonable inferences are drawn in its favor, shows that a reasonable juror could find the Defendant guilty as to Count 6 beyond a reasonable doubt. Thus, it was sufficient to provide a reasonable basis for a rational juror to conclude beyond a reasonable doubt that Defendant knowingly and willfully falsified, concealed, or covered up by trick, scheme, or device material facts within the jurisdiction of the SSA. Count 6 was based on Defendant's alleged misrepresentations to the SSA regarding his disbarment in several jurisdictions so that he could allegedly "participate in proceedings before SSA and receive payment in connection with his representation of SSA claimants." Dkt. 1 ¶ 20.

            **a)**    Falsified, Concealed, or Covered Up a Material Fact Within SSA's Jurisdiction (First & Second Elements)

As to the first and second elements, Defendant does not contend that there was insufficient evidence for a reasonable juror to conclude beyond a reasonable doubt that Defendant: (1) falsified, concealed, or covered up a material fact by trick, scheme, or device; and (2) the fact was made in a matter within the jurisdiction of the SSA. *See* Dkt. 302. Notwithstanding Defendant's concession, it is independently

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:21-CR-00335-JAK-1 | Date | February 19, 2026 |
| Title | United States v. Jeffrey Moffatt | | |

determined that a reasonable juror could conclude that the Government presented sufficient evidence as to these two elements under the applicable standard. As noted above, the Government presented evidence at trial establishing that the State Bar of Arizona disbarred the Defendant in April 2016, and that he was subsequently reciprocally disbarred from five federal courts. *See* Exs. 2, 3, 5; Dkt. 331 at 7. Defendant does not contest these facts. Further, the Government presented evidence that Defendant failed to notify the SSA that he had been disbarred, as required, and checked "no" in response to whether he "now or [had] previously been [d]isbarred or suspended from a court or bar to which [he] was previously admitted to practice as an attorney." *See, e.g.,* Exs. 28, 33, 37, 41, 45; *see also* Dkt. 331 at 7–9; 20 C.F.R. § 404.1740(b)(7)–(8). Based on this evidence, a rational juror could conclude that the Government proved the first two elements of false statement beyond a reasonable doubt.

> b)      Willfully Falsified, Concealed or Covered Up (Third Element)

To establish that a defendant acted "willfully," "the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 192 (1998). In assessing whether the Government carried its burden to prove Defendant acted willfully, a juror may rely on circumstantial evidence "to make common sense inferences from the proven facts." *United States v. Charley*, 1 F.4th 637, 644 (9th Cir. 2021) (quoting *United States v. Gallop*, 694 F.2d 205, 206 (9th Cir. 1982)). Defendant advances several arguments in support of his position that the Government did not meet these standards through the evidence that was presented at trial.

*First*, Defendant argues that the evidence at most "establishes mistake, negligence, or good-faith belief," but not willfulness. Dkt. 302 at 24. SSA Form 1699 requires that a person seeking to represent a claimant before the SSA be "in good standing and admitted to practice law before the U.S. Supreme Court; a U.S. Federal, state, territorial, insular possession, or District of Columbia court; or a member of a state bar if that membership carries with it the authority to practice law in that state." *See, e.g.,* Exs. 128–30. Defendant argues that he had no reason to make any alleged misstatement because he met the SSA requirements through his admission to practice before the Federal Circuit Court of Appeals throughout the time period when he represented the claimants in the matters that are at issue in this case. Dkt. 302 at 14, 24. On this basis, he argues that "absence of motive undermines any inference of willfulness." Dkt. 302 at 25. The Government responds that motive is not an element of Count 6. Dkt. 331 at 24. Willfulness requires a showing that Defendant knew his conduct was unlawful, not why he engaged in that conduct. *Bryan*, 524 U.S. at 192. Thus, Defendant's motive is not a necessary element to show that he willfully falsified, concealed, or covered up his disbarment.

*Second*, Defendant argues that his routine completion of SSA Form 1699 in the same manner for many years "is consistent with mistake or oversight" rather than "a deliberate, knowing plan to deceive a federal agency." Dkt. 302 at 25. The Government responds that Defendant had a duty to disclose affirmatively to the SSA that he had been disbarred, which he never did. Dkt. 331 at 24. Further, the Government refers to the evidence that Defendant complied with a July 2017 Ninth Circuit order that he withdraw as counsel of record because of his disbarment. *See* Ex. 12 at 7 (directing Mr. Moffatt to withdraw from representation, "serve [the court's] order on his clients in all pending cases, and turn over all client files and materials to the clients" because he "has been disbarred and is not eligible to practice before the Ninth Circuit."); Dkt. 331 at 24. The Government adds that, "at the same time[,] he was affirmatively representing to the SSA that he had never been disbarred." Dkt. 331 at 24. There was also evidence that Defendant continued to misrepresent that he had not been disbarred to the SSA on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:21-CR-00335-JAK-1 | Date | February 19, 2026 |
| Title | United States v. Jeffrey Moffatt | | |

Form 1696 after the SSA initiated the suspension or disqualification process for Defendant in April 2017 and issued a notice of intent to sanction him in December 2017. *See, e.g.*, Exs. 28, 33, 41, 45, 57, 131, 133; *see also* Dkt. 331 at 23. In August 2019, following the process with respect to the 2017 notice to Defendant that SSA would go forward with a process to disqualify Defendant, the SSA notified Defendant that it was resuming sanction proceedings based on his misstatements as to his bar status on SSA forms. Ex. 132; Dkt. 331 at 11, 24. From this evidence, a rational juror could conclude that the Government met its burden to prove that Defendant was aware that he was required to disclose his disbarment, but failed to do so. Thus, the evidence was sufficient for a rational juror to conclude that Defendant knew his conduct was unlawful and was not the result of a mistake or oversight.

*Third*, Defendant argues that he did not act willfully because he had a "good-faith belief that the Arizona disbarment order was procedurally defective, not final, and subject to reversal on appeal." Dkt. 302 at 25. The Government responds that evidence of the Arizona Supreme Court's December 2016 order denying Defendant's appeal of his disbarment and Defendant's compliance with the Ninth Circuit's order demonstrates that he acted willfully. Dkt. 331 at 24–25. Defendant cites *United States v. Henderson*, in which "there was no evidence presented that" when the defendant reported his diagnosis to Veterans Affairs, he "had any knowledge that the diagnosis was incorrect or that his report of the diagnosis was an unlawful act." 318 F. Supp. 3d 1221, 1242 (E.D. Wash. 2018). The trial evidence in this case was different. It was sufficient to show beyond a reasonable doubt that Defendant knew he had been disbarred, but did not disclose its occurrence to the SSA. Indeed, absent such knowledge, there would have been no reason for him to have filed an appeal of his disbarment. That Defendant disagreed with the basis for his disbarment does not sufficiently offset the other evidence as to his alleged willfulness under the standards that apply to the Motion. Accordingly, drawing all reasonable inferences in the Government's favor, there was sufficient evidence to support a rational juror's conclusion that the Defendant acted willfully. *See Leos-Maldonado*, 302 F.3d at 1063.

*Fourth*, Defendant argues that, because SSA Special Agent Ibarra testified that he did not know the SSA rules regarding disqualification of a person seeking to represent a claimant before the SSA, the Government failed to prove beyond a reasonable doubt that Defendant knew that he had violated them. Dkt. 302 at 26–27. The Government responds that Agent Ibarra's investigations were not part of the civil disqualification process, but rather "were conducted and charged in consultation with the U.S. Attorney's Office." Dkt. 331 at 25. The regulations to which Defendant refers, 20 C.F.R. §§ 404.1765–75, govern SSA procedures for disqualifying a person from representing a claimant in proceedings before the SSA. That Agent Ibarra's knowledge of these procedures was limited does not show that there was insufficient evidence to support a rational juror's conclusion that the Defendant understood that his answers on SSA forms as to whether he had been disbarred were false and unlawful.

*Finally*, Defendant argues that the jury could not reach a unanimous verdict on Counts 1–5, which demonstrates his lack of "the knowing and willful intent to deceive required for Count Six." Dkt. 302 at 8, 27. This argument is unpersuasive. The interstate wire fraud charged in Counts 1–5 includes different elements than the false statement charge in Count 6. Dkt. 331 at 26. Further, the jury deliberations were confidential. There is no evidence as to the reason that the jurors could not reach a unanimous verdict on any of Counts 1-5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:21-CR-00335-JAK-1 | Date | February 19, 2026 |
|---|---|---|---|
| Title | United States v. Jeffrey Moffatt | | |

        c)      Material Fact (Fourth Element)

The final element, "materiality," does not require "proof of actual reliance . . . but the government bears the burden of proving that the statement is capable of influencing agency decision." *United States v. Talkington*, 589 F.2d 415, 417 (9th Cir. 1978); *see also United States v. Serv. Deli Inc.*, 151 F.3d 938, 941 (9th Cir. 1998) ("[T]he test is the *intrinsic* capabilities of the false statement itself, rather than the possibility of the actual attainment of its end as measured by collateral circumstances.") (citation omitted). "Materiality" is a "mixed question of fact and law typically resolved by juries." *Serv. Deli*, 151 F.3d at 941.

Defendant contends that the alleged false statements for which he was charged "had no potential to influence any SSA decision because the SSA's own regulations authorized Defendant to practice, regardless of his response on the form" until January 30, 2024, when his appeal of his SSA disqualification was rejected. Dkt. 302 at 8–9, 12; *see* Ex. 137. "[A]ctual influence" of the SSA, however, "is not required, so long as the misstatement has a *propensity* to influence agency action." *United States v. King*, 735 F.3d 1098, 1108 (9th Cir. 2013). It is undisputed that Defendant was permitted to represent clients before the SSA until the SSA decision to disqualify him from doing so became final after his appeal. *See* Dkt. 331 at 18. However, "none of [the] SSA procedures and regulations permitted [D]efendant to affirmatively lie to the SSA . . . ." Dkt. 331 at 18; *see also* Trial Transcript, October 8, 2025, at 188:23–190:6. According to the trial testimony of Stacy Weisbrock of the SSA Office of General Counsel, absent the Defendant's misrepresentations, the SSA could have "move[d] quickly in [its] sanction proceedings." Trial Transcript, October 8, 2025, at 195:20–196:16, 198:4–13; Dkt. 331 at 18. Because the Government presented evidence that Defendant's misrepresentations had a "propensity to influence" the SSA in this manner, a rational juror could find Defendant's misrepresentations were material. *See King*, 735 F.3d at 1108.

Defendant contends that the SSA cannot suspend a party from representing claimants based on a state bar action for which an appeal is pending. Dkt. 302 at 12. Defendant then argues that even if he "had disclosed his Arizona proceedings on SSA Form 1699, the SSA would have . . . reach[ed] the same conclusion about interim practice rights during his appeal, and [have] authorize[d] Defendant to continue practicing." *Id.* at 14. By December 2016, the Arizona Supreme Court had denied Defendant's appeal. Dkt. 331 at 7. Even after his appeal was denied, Defendant repeatedly misrepresented his disbarment in at least 57 matters before the SSA. Ex. 158. Further, as explained previously, if Defendant disclosed his disbarment as required, the SSA could have taken corresponding actions sooner. *See id.* at 18; Trial Transcript, October 8, 2025, at 195:20–196:16, 198:4–13. Because there was evidence that Defendant's misrepresentation influenced the SSA's decisions, a rational juror could conclude that it was material.

*Third*, Defendant argues that, even if he had had disclosed his disbarment on Form 1699, the SSA could not have immediately disqualified him because the SSA must provide due process, *i.e.*, notice and an opportunity for hearing, before doing so. Dkt. 302 at 12, 14, 17. As Ms. Weisbrock testified, if an earlier SSA investigation found that Defendant had been disbarred for misconduct, the SSA would have initiated disqualification proceedings. Trial Transcript, October 8, 2025, at 195:20–196:16, 198:4–13; *see* Dkt. 302 at 17. Therefore, as noted above, if Defendant had timely disclosed his disbarment, the SSA could have commenced the disqualification process sooner, which ultimately would have resulted in a termination of SSA payments to Defendant earlier. Accordingly, a rational juror could conclude that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.   2:21-CR-00335-JAK-1                                    Date   February 19, 2026

Title   United States v. Jeffrey Moffatt

the Government showed beyond a reasonable doubt that Defendant's false statements could have influenced the SSA's actions. *See Serv. Deli Inc.*, 151 F.3d at 942 (the defendant's misrepresentation was material because absent the misrepresentation, the agency would have investigated whether the conduct was improper).

*Fourth*, Defendant argues that, because SSA Form 1699 requires only one qualifying bar or federal court admission, he could continue to practice before the SSA during the relevant time period. Dkt. 302 at 11, 14. The Government responds that, notwithstanding that Defendant maintained a bar admission, it did "not permit him to affirmatively lie about his other disbarments." Dkt. 331 at 19. As Ms. Weisbrock explained, a disbarment order by a State Bar that is based on attorney misconduct, as well as that attorney's statement on an SSA form that he has not been disbarred, are separate and independent bases for disqualification from representing individuals before the SSA. Trial Transcript, October 8, 2025, at 194:12–24. Thus, as previously explained, a rational juror could conclude that the Government showed beyond a reasonable doubt that Defendant's false statements were material.

*Finally*, Defendant's reliance on *United States v. Talkington* is unpersuasive. The defendant in *Talkington* appealed his conviction of making five false statements to the Interstate Commerce Commission. 589 F.2d 415. Based on a review of the trial evidence, the court found that the first two statements were material, but "there was no evidence that any of the other three statements, when considered separately, were capable of affecting the exercise of governmental functions." *Id.* at 417. Accordingly, because the Government "fail[ed] to prove the materiality of three of the charged statements," the jury instructions should have "segregate[d] them from the case submitted to the jury." *Id.* The defendant's conviction was thus "fatally defective." *Id.* at 418. Here, the Government contends that "all of [D]efendant's misrepresentations that he had never been disbarred were material . . . ." Dkt. 331 at 22. That is the manner in which the matter was presented at trial. In light of the foregoing, there was sufficient evidence for a rational jury to conclude that all of the statements were material. Accordingly, there is no risk that the "jury found [Defendant] guilty of making a false statement which was not material . . . ." *Talkington*, 589. F.2d at 417–18.

As shown by this discussion, viewing the evidence in the light most favorable to the Government, a rational trier of fact could find, beyond a reasonable doubt, that the four essential elements of false statement to a government agency, in violation of 18 U.S.C. § 1001(a)(1), were presented as to Count 6.[3]

---

[3] In support of the Motion, Defendant also argues that there were *Brady* and *Giglio* violations, Defendant had medical issues, and evidence was erroneously excluded regarding the propriety of his Arizona State Bar disbarment and whether then-Acting SSA Commissioner Nancy Berryhill was serving lawfully in her role. Dkt. 302 at 29–46. Defendant's Supplemental Addendum to Rule 29 Motion advances similar arguments based on the claimed impropriety of his Arizona State Bar disbarment. Dkt. 339. Prior Orders issued in this action rejected each of these arguments. *See* Dkts. 227, 252, 261, 263, 268, 269. Accordingly, it is unnecessary to take judicial notice of recent court filings that Defendant argues support the impropriety of his Arizona State Bar disbarment (*see* Dkt. 340 at 2) for the reasons stated in the prior orders as to why that alleged impropriety is not relevant in this action. Thus, the statements by Defendant that he had not been disbarred were inaccurate. Defendant's argument that his medical conditions prevented him from forming the requisite intent (Dkt. 302 at 35) is also rejected for the reasons stated on the record. *See* Trial Transcript, October 7, 2025, at 5:1–10:2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:21-CR-00335-JAK-1 | Date | February 19, 2026 |
| Title | United States v. Jeffrey Moffatt | | |

### III.     Conclusion

For the reasons stated in this Order, the Motion is **DENIED**.

**IT IS SO ORDERED.**

                                                            :

Initials of Preparer          LC2