**JEFFREY DEAN MOFFATT, COMA SURVIVOR, TBI, JD, MBA, BA and LL.M (Masters in Taxation Law) and *In Propria Persona – Ret. Fed Attorney***
**1070 West Barrel Springs Road, Box 11**
**Palmdale, CA  93551**
**Email Address:** jeffreydeanjustin@gmail.com
**Telephone No.: (661) 435-2417**

Jeffrey Dean Moffatt, *In Propria Persona*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## (WESTERN DIVISION)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>JEFFREY DEAN MOFFATT,<br><br>Defendant. | **DISTRICT COURT DOCKET NO.:** 2:21-cr-00335-JAK-1<br><br>**DEFENDANT'S**<br>**FORMAL OBJECTIONS TO THE PRESENTENCING INVESTIGATION REPORT DOCUMENT #346**<br><br>Honorable Judge John A. Kronstadt, United States District Court Judge<br><br>Sentencing Hearing – June 4, 2026, Thursday 8:30am |

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:** Defendant moves the court with filing Formal Objection to the Presentencing Investigation Report Document **#346.**

**INDEX OF PARAGRAPHS**

| Section | Title / Subsection | Page |
|---|---|---|
| I. | INTRODUCTION | 5 |
| II. | OBJECTIONS TO FACTUAL STATEMENTS (RULE 32) | 6 |
| | 1. Objection to Page 6, Item 5 (Medical History and Court Appearances) | 6 |
| | 2. The relevancy of this is when ordered to appear in person... | 6 |
| | 3. Court Attendance | 6 |
| III. | OBJECTIONS TO PSR CALCULATIONS AND FACTUAL ACCURACY | 7 |
| A. | Objection to §2B1.1 Loss Enhancement (PSR Page 7) | 7 |
| B. | USSC Amendment 826 (effective November 1, 2024) | 8 |
| | 1. Respect for the Jury's Role... (Sixth Amendment + Apprendi Line) | 8 |
| | a.–e. Sub-arguments (hung jury, due process, double jeopardy, etc.) | 8-10 |
| C. | Objection to Abuse of Private Trust Enhancement (PSR Page 7, Line 26) | 11 |
| | a.–c. Arguments regarding corrupt ALJ and 9th Circuit appeal | 12-14 |
| D. | Dodson requests restitution | 14 |
| E. | Request for Reduction Based on Criminal History (PSR Page 9, Line 34) | 14 |
| F. | Constitutional Challenges and Motion in Limine (PSR Page 8, Line 31) | 15 |
| IV. | CORRECTIONS TO PERSONAL HISTORY AND CHARACTER | 16 |
| | a. Athletic and Professional Mentorship | 16 |
| | b. Recognized by World Champion... Dan Gable | 16 |
| | c. Inventory Categorization / Community Work / Small Claims | 17 |
| | 2. Objection to Page 6 (Failure to Advise SSA of Disbarment) | 17 |
| | 3. Objection to Page 24 (Disparity in Discipline) | 19 |
| V. | OBJECTIONS TO GUIDELINE ENHANCEMENTS | 19 |
| A. | The +8 Loss Enhancement is Factually and Legally Improper | 19 |
| VI. | § 1001 Materiality | 23 |
| VII. | Challenging SSA Jurisdiction (Lucia/Berryhill) | 24 |

| Section | Title / Subsection | Page |
|---|---|---|
| VIII. | The "Void Underlying Judgment" & Due Process | 26 |
| IX. | ARGUMENT FOR DOWNWARD VARIANCE | 27 |
| X. | Statement of Position | 30 |
| XI. | CHALLENGE TO THE UNDERLYING DISBARMENT (VOID JUDGMENT) | 32 |
| XII. | CONCLUSION | 35 |

**INDEX OF EXHIBITS**

| Exhibit | Description | Cited on Page(s) |
|---|---|---|
| A | Improper appointment of O'Neil (Andrew Thomas) | 12,13,22 |
| B/C | Disciplinary records of Christopher Perry (Jane O Ross) D. Kim Harding 15 | 19 |
| E | Protection of criminal activity by O'Neil (Aubushon) | 12,13,22,23 |
| G | Mark Dixon Affidavit (Kickbacks/Grand Jury interference) | 12,13,19,22,33 |
| H | Legal Opinion of Bob Barr, CIA and Congress | 15 |
| I | Miracle Star articles | 17 |
| J | Character reference letters | 17 |
| K | Moffatt's work supporting schools | 17 |
| L | 9th Circuit Briefing Schedule | 21 |
| M | Removal Action Case CV18-7752-VBF | 18 |
| N | Government records authorizing practice until 01/30/2024 | 7,12,,14,18,20,22,29,31 |
| O | Qui Tam documentation ($40 Billion whistleblower claim) | 20,25 |
| P | Matley Forensic Report (Missing/Unsigned Oath) | 23 |
| Q/R | AZ Rule 51 vs. AZ Constitution Art. 6 | 13 |
| S | New Medical diagnosis | 7 |
| T | New diagnosis (environmental Asthma) | 25,35 |

| Exhibit | Description | Cited on Page(s) |
|---------|-------------|------------------|
| U | Faulty SSA form 1699 | 24,31 |

## TABLE OF AUTHORITIES

**Cases**

| Case | Page(s) |
|------|---------|
| *Apprendi v. New Jersey*, 530 U.S. 466 (2000) | 8.9 |
| *Ashe v. Swenson*, 397 U.S. 436 (1970) | 11 |
| *Blakely v. Washington*, 542 U.S. 296 (2004) | 9 |
| *Cochran v. SEC*, 598 U.S. 1 (2023) | 25,32 |
| *Kungys v. United States*, 485 U.S. 759 (1988) | 23,31 |
| *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) | 20 |
| *Lucia v. SEC*, 138 S. Ct. 2044 (2018) | 24,25,27 |
| *McClinton v. United States*, 143 S. Ct. 2400 (2023) | 8,9,11 |
| *Richardson v. United States*, 468 U.S. 317 (1984) | 10 |
| *United States v. Booker*, 543 U.S. 220 (2005) | 9,15,20 |
| *United States v. Gaudin*, 515 U.S. 506 (1995) | 24,31 |
| *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987) | 27,31 |
| *United States v. Watts*, 519 U.S. 148 (1997) | 9.15 |

**I. INTRODUCTION:** Defendant Jeffrey Dean Moffatt ("Defendant") respectfully submits these objections and responses to the Presentence Investigation Report (PSR). Defendant moves this Court to reject the proposed Sentencing Guidelines offense level of 14 , Docket 346 filed by Amber Dodson and instead find that an effective offense level of 4 is appropriate, unless the court decides to do the righteous thing and dismiss the entire case. There are now 4 underlying cases on this matter,

9th Circuit Court of Appeals Docket # **26-2839 underlying civil case**

**2:17-cv-06029-VBF-DFM- underlying Civil case**

**CV 03525-DFM- Qui Tam**

**2:18 cv-7752** – Removal action to Federal Court

This request is supported by newly promulgated sentencing guidelines, evidence of a continuing and viable challenge to the underlying State Bar of Arizona proceedings, and significant mitigating personal history that was inaccurately reflected in the PSR.

**II. OBJECTIONS TO FACTUAL STATEMENTS (RULE 32)**

1.  Objection to Page 6, Item 5 (Medical History and Court Appearances):

Defendant objects to the characterization of his medical status and prior non-appearances.  Medical Evidence: Defendant has provided documentation of severe Traumatic Brain Injury (TBI) and environmental Asthma. While a physician saw the Defendant privately, the underlying conditions are well-documented in the record. Video evidence of the Asthma instances. Below is a hyperlink to videos of a handful (13) of Defendant Moffatt's Asthma events, each one on itself could have resulted in Defendant Moffatt's 5th Grand Mal Seizure. This is a small fraction of the video documentation, but it should be enough to prove the point. Other Asthma events available if requested.

https://drive.google.com/drive/folders/1M9bpvI59fsJ6_KQnU-wVVYSA-PFIEKva

2.      The relevancy of this is when ordered to appear in person, every single time Defendant Moffatt experienced torture because of the environmental asthma reaction to pollution. As can be seen in the 13 videos of which is a fraction of the total, any single event could have ended up triggering the 5th Grand Mal Seizure.

3.      **Court Attendance:** Defendant did not "fail" to appear; rather, Defendant attempted to appear via Zoom due to medical necessity and remained in constant communication with the Court Clerk on every occasion of non-physical appearance. Emails upon  request. A New Diagnosis as of 5/11/2026 Gastro-

Esophageal Reflux Disease without Esophagitis K21.9, this is a symptom of the environmental Asthma resulting in vomiting. Exhibit S.

## III. OBJECTIONS TO PSR CALCULATIONS AND FACTUAL ACCURACY

A..Objection to §2B1.1 Loss Enhancement (PSR Page 7) The PSR currently applies an 8 level increase based on the Defendant's Fees. Defendant requests that the Court apply the (2026) Amendments, Exhibit F, to the Sentencing Guidelines, effective April 16, 2026, which adjust the Loss Tables. Under the updated §2B1.1(b)(1), the threshold for such increases has been raised, which would effectively drop the increase from 8 points to 6 point, putting Defendant at a level 10 or 12. Defendant further maintains that under **Exhibit N (USAO Exhibit 137),** Defendant's authorization to practice and earn funds was valid through 2024, rendering the 2016–2021 fee timeframes legitimate and not subject to loss calculation. In the alternative the "loss" of $113,246.00 is not an actual loss but attorney fees earned as a representative. Additionally the Grand Jury nor the Jurors in the present matter ever found Defendant guilty of this issue. As a final point, it is past the statute of limitations to argue a single dollar of this earned income.

**B. USSC Amendment 826** (effective November 1, 2024): revises USSG §1B1.3 (Relevant Conduct) to exclude conduct for which the defendant was acquitted in federal court from being used to calculate the advisory Guidelines range (including base offense level, specific offense characteristics like loss amount, and adjustments).

1.      Respect for the Jury's Role and the Beyond-a-Reasonable-Doubt Standard (Sixth Amendment + Apprendi Line) The Amendment 826 rationale emphasizes that an acquittal reflects a jury's rejection of proof beyond a reasonable doubt, so it should not be used to enhance the Guidelines range via a lower preponderance standard. This promotes "respect for the law" and the jury's central role. Amendment 826's policy (28 U.S.C. § 994(a)(2) and § 991(b)—promote respect for the law and just punishment) should guide judicial discretion even for non-covered conduct. Defendant is requesting a downward variance under 18 U.S.C. § 3553(a) to achieve a similar result, following McClinton v. United States, 143 S. Ct. 2400 (2023).

a.  A hung jury is also a jury outcome—it means the government failed to persuade all 12 jurors unanimously beyond a Reasonable Doubt. Treating it differently from an Acquittal creates an arbitrary distinction: both scenarios show the government did not secure a conviction on that conduct. Allowing enhancements on hung counts undermines the Sixth Amendment right to a jury

trial in the same way critics (including several Supreme Court Justices) argued for acquitted conduct.

b. Key authority: Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny (Blakely v. Washington, United States v. Booker, 543 U.S. 220 (2005)) hold that facts increasing the penalty range must be jury-found beyond a reasonable doubt. While Watts (1997) permitted acquitted-conduct enhancements pre-amendment, the Commission's shift and concurrences in McClinton v. United States, 143 S. Ct. 2400 (2023) (Sotomayor, J., statement; Kavanaugh, J., joined by Gorsuch & Barrett) signal growing skepticism about overriding jury results with judge-found facts at sentencing.

c. Once jeopardy attaches and a jury deadlocks on specific conduct/amounts, using that conduct at sentencing effectively lets a judge nullify the jury's inability to convict, violating the spirit of Apprendi/Booker and the Commission's respect-for-jury policy.

**d. Due Process and Fundamental Fairness (Fifth Amendment)** Sentencing on hung-jury conduct creates the same unfairness as acquitted conduct: it punishes (via higher Guidelines) conduct the government could not prove to a

unanimous jury. This risks undermining the presumption of innocence and the finality/seriousness of jury proceedings.

1. The Commission excluded acquitted conduct to protect "the credibility of our courts." The same credibility concern applies when a jury hangs—the public and defendant reasonably view it as a failure of proof, not a green light for enhancements.

2. Equal Protection / similarly-situated argument: Defendants in multi-count trials where the jury acquits on some counts vs. hangs on others are similarly situated in that the government failed to obtain a conviction. Treating them differently is arbitrary, especially post-Amendment 826.

**e. Double Jeopardy Principles (Fifth Amendment)** Double Jeopardy does not bar retrial after a hung jury (*Richardson v. United States*, 468 U.S. 317 (1984)), but it does protect against multiple punishments for the same offense. Using hung conduct for Enhancements can be framed as additional

punishment without a conviction, analogous to arguments made against acquitted-conduct sentencing.

1. Collateral estoppel (issue preclusion) from *Ashe v. Swenson*, 397 U.S. 436 (1970), applies to acquittals but not directly to hung counts (since no final decision). Still, courts can argue that a deadlock on specific factual issues (e.g., drug quantity or loss amount) should bar relitigation at sentencing under principles of fairness.

2. Commission's reasoning, *McClinton* concurrences, and Sixth Amendment concerns. Some courts may be receptive post-2024, especially if the Hung counts involved the exact "amount at issue."

3. If the Court agrees with the McClinton concurrences the addition of 10 to 12 extra points should be removed in a downward variance.

**C. Objection to Abuse of Private Trust Enhancement (PSR Page 7, Line 26)** Defendant objects to the 2-level adjustment for

abuse of a position of trust. Defendant maintains a good-faith belief in his right to practice law, supported by the ongoing challenge to his Arizona disbarment and the government's own **Exhibit 137, Exhibit N**. This item is actually a pre existing case and in litigation in the 9th Circuit Court of Appeals Docket # **26-2839** with Briefing Schedules just announced.

a.  To streamline the understanding of the corrupt ALJ, in the present instance take a state employee ALJ  that is protecting friends and relatives and shuts down subpoena's as a superior court Judge as well as  investigations by Arizona Prosecutors, here O'Neil, See **Exhibit A,** Thomas and Exhibit E, Aubuchon. Two Grand Juries were held finding  over 50 felonies twice, and then out of jurisdiction, and last minute despite the jury already decided the second grand jury, William J' O'Neil  is appointed to oversee those Grand Juries. Proof of assignment is in the last several pages of **Exhibit G Dixon**, showing both the assignment to O'Neil to take over the Grand Jury from Judge Olson, to William J O'Neil on

6/30/2010 Crim Mis ( in re 66 SGI 86). This was done by Supreme Court Justice Rebecca White-Berch.

b. **Dixon Exhibit G** the last few pages show that Abuchon, a prosecutor was now under Grand Jury investigation, also corroborated by her **Exhibit E**, and Thomas's statements in **Exhibit A.** Amazingly O'Neil was assigned over the Grand Juries of the prosecutors whom were investigating O'Neil's fraud as well as his friend's fraud related to the $340 million Court Tower project. Then amazingly, Supreme Court Justice Rebecca Berch self creates Arizona Supreme Court Rule 51 **Exhibit Q,** in direct violation of the Arizona Constitution Article 6, regarding the Appointment of Judges in Arizona, **Exhibit R** and appoints O'Neil disbarring Thomas, Aubuchon, Aubuchon's attorney Ed Moriarity partner to Jerry Spence, and Suspending Rachel Alexander for 6 months and a day. Note Rachel Alexander was a witness in the present case.

c. Compounding the issue for Moffatt was the denial of due process and Disparate Treatment via the Criminal and illegally appointed

ALJ  O'Neil in Moffatt's case, which was brought to this court's attention and disregarded, but thankfully is being reviewed in the underlying open and active 9th Circuit Court of Appeals Case Docket # **26-2839.**

**D. Probation Officer Amber  Dodson requests Restitution,** despite no claims for restitution on the claimed just under $113,246.00 Moffatt earned while practicing during an appeal status, **Exhibit N (USAO  Exhibit 137).** Note Defendant's Exhibit 10004, showing he was still in good standing with at least 1 court at the time of trial, as well as the time in question. The Dodson request  is amazing since **1.** It is past the statute of limitations; **2.** No victims; **3.** The Government owes to the Moffatt family over $1 million in unpaid Dividends and the Government has lost an 8-0 Decision regarding the illegal taking of FNMA *Berkley Insurance Co. et al. v. Federal Housing Finance Agency (FHFA) et al.* **No. 1:13-cv-01053 (RCL) (and related MDL), U.S. District Court for the District of Columbia. The government has not paid, and has appealed the decision.**

**E.**  Request for Reduction Based on Criminal History (PSR Page 9, Line 34) Defendant concurs with the finding of no prior criminal history. Pursuant to

USSG §4C1.1, Defendant is entitled to a 2-level reduction as a first-time, non-violent offender.

**F. Constitutional Challenges and Motion in Limine (PSR Page 8, Line 31)** While the Court previously precluded discussion of the Arizona bar proceedings, the U.S Probation Department, via Parole Officer Dodson has now opened this door by relying on those proceedings for sentencing purposes. Under *United States v. Watts*, 519 U.S. 148 (1997), and the *Booker* line of cases, Defendant must be afforded an opportunity to rebut information used for Sentencing Enhancements, even if that information was excluded at trial. Defendant cites to the Legal Opinion of Bob Barr **(Exhibit H)** prior CIA officer as well as Congressman, and the Affidavit of Kim Harding (**Exhibit D)** as evidence that the underlying Arizona disbarments were procedurally deficient.

    a. This matter is a Preexisting case and actively being litigated at the 9th Circuit Court of Appeals Dkt **26-2839**

**IV. CORRECTIONS TO PERSONAL HISTORY AND CHARACTER**

> a. **Athletic and Professional Mentorship (PSR Page 11, Line 51; Page 14, Line 74):** The PSR fails to adequately reflect Defendant's history. Defendant was a Greco age group National Champion (1981), an alternate on the Age group world team (1981), and an alternate on the 21 and under world team (1985). He was teammates with Olympic medalist Nate Carr and his brothers, Michael and Soliman, and personally mentored Olympic Bronze medalist Adam Wheeler. Defendant has assisted in teaching to hundreds of individuals as well as professional fighters and stuntmen Wrestling, Judo, and BJJ from 1987 to 2022.
>
> b. **Recognized by World Champion, Olympic Champion, Coach at Iowa University and Fellow Iowa State University wrestler Dan Gable  video done for Jeff**
>
> https://youtu.be/jSUMKm6N2q8

**c. Inventory Categorization:** As a correction to the PSR, Defendant does not "count cars." He categorizes a large inventory of Athletic Trading cards at a rate of roughly 150 per day.

• Community Work (PSR Page 14, Line 77): The reference to "Miracle Star" in the PSR is insufficient. Exhibit I contains numerous articles detailing the work and life transformations facilitated by Jeff and Star Moffatt (Wife of nearly 36 years) through this organization. See Character reference letters Exhibit J, and the Moffatt's work supporting schools Exhibit K.

• **Small Claims (PSR Page 15, Line 85):** The $30,000 figure cited is actually related to nearly 12 uncollectable small claims cases, rather than personal debt.

**2. Objection to Page 6 (Failure to Advise SSA of Disbarment):**

Defendant objects to the statement that Defendant failed to advise the

SSA of his disbarment.

    a. **Asset Forfeiture:** The Government declined on the record to

pursue this.

    b. **Internal Knowledge:** The SSA case has been on internal appeals

since 2017. **Exhibit N** (the Government's own trial exhibit 137)

confirms that the government authorized Defendant to practice

through January 30, 2024.

    c. **Agency Awareness:** SSA Criminal Investigator Alejandro

Ibarra's trial testimony claiming ignorance is contradicted by

**Exhibit N** (USAO's **Exhibit 137**) and **Exhibit M (Case CV18-**

**7752 VBF)**, the removal action through which the government

was formally and legally aware of Defendant's status the then and

present ongoing litigation. The SSA case stated in **Exhibit M** has

a briefing schedule due this month.

### 3. Objection to Page 24 (Disparity in Discipline):

- Defendant objects to the inequity of the disciplinary history cited. Specifically, the PSR ignores that attorney Christopher Perry, who was imprisoned for manslaughter, received only a one-day suspension from Arizona State employee, ALJ William J. O'Neil (**Exhibits B, C**), while Defendant faced permanent disbarment for constitutionally protected litigation activity.

- **Additional disparity in treatment**

  **See Sex cases handled totally differently than Moffatt** https://moffattmedia.com/arizona-lawyers-charged-by-the-state-bar-of-arizona-not-disbarred-for-sexual-harassments-against-clients-and-others/

  https://moffattmedia.com/sex-with-prospect-legal-clients-is-allowed-by-the-state-bar-of-arizona/

## V. OBJECTIONS TO GUIDELINE ENHANCEMENTS

## A. The +8 Loss Enhancement is factually and legally improper

The PSR recommends an 8 point enhancement based on SSA fees. This must be stricken for three reasons:

1. **Whistleblower Retaliation:** The overcharging in this matter is a direct motive of retaliation against Defendant for being a Private

Attorney General in a **Qui Tam action (Exhibit O)**, which identifies a $40 billion error within the SSA. As the potential recipient of a 30% whistle blower  fee, Defendant's prosecution was an attempt to silence Defendant as a  whistleblower.

2. **Government Authorization: Exhibit N** confirms the government sanctioned Defendant's practice during the period charged. The government is estopped from charging "loss" for services it explicitly authorized.

3. **Loper Bright Standards:** Under *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), this Court should not defer to the SSA's determination of "unauthorized" practice but must independently find that Defendant was eligible under **20 C.F.R. § 404.1705(b)**.

4. **Removal Action** in Federal Court CV18-7752 related to Moffatt's ability to practice SSA law was and is a pre-existing and Moffatt's ability to practice in front of SSA is currently a ripe case and briefing due this month.

5. **The underlying illegal  disbarment is currently at the 9th Circuit Court of Apeals case 26-2839,** prior Federal Case 2:17-cv-06029-VBF-DFM, with briefing scheduled for June, **Exhibit L.**  As such the disbarment issue is still a matter at issue and was pre-existing prior to the filing of the present case. Note the Qui Tam is alleging  **over $40 billion in fraud found.**

6. **Moffatt objects to Probation Officer's Dodson's claim that Moffatt failed to convey to SSA his disbarment**

**Page  6, ¶5** Defendant Objects to Probation Officer Dodson statement in pertinent part when Dodson said the following: *"Moffatt failed to disclose to the SSA that he had been disbarred."*   This is amazing alternate reality only valid in the twilight zone, given that Moffatt had brought SSA into Court for a removal action in 2017 and that case is still presently active. SSA also had an administrative process allowing Moffatt to practice up until 1/30/2024, **Exhibit N,** ( USAO's **Exhibit 137**) so to say SSA had no knowledge denies the above facts and is factually false. **Defendant will assume that Dodson is inferring**

**to the "State" Bar of Arizona.**  However, one's ability to practice law in Arizona is governed by the  Supreme Court of Arizona, See screen shot of  Rule 46. There has never been a single direct Order or Judgment signed by an Arizona Supreme Court Judge advising Moffatt was unable to practice in Arizona. In fact, an ALJ criminal, appointed to cover up corruption he was complicit in, named William J O'Neil whom was appointed illegally to oversee attorney discipline illegally. See Former Prosecutor **Exhibit A** Thomas, **Exhibit G** Dixon, and **Exhibit E** Aubuchon Note this illegal appointment relates to the underlying case, and now has a briefing schedule at the 9th circuit Court of Appeals  Docket 26-2839.

RULE 46

Jurisdiction in Discipline a

(g) Disbarred Lawyers. Upon order or judgment of the court disbarring a member, the member shall no longer be entitled to the rights and privileges of a lawyer, but shall remain subject to the jurisdiction of this court with respect to matters occurring prior to the disbarment.

**SEE SOURCE LINK:**

https://www.courtrules.net/arizona/az-supreme-court/rule-46

## VI.  §1001 Materiality

A statement must have the "natural tendency to influence" a decision.

1.  **Argument:** Given  SSA continued to accept Defendant's  filings and pay Defendants fees based on its own internal record (Exhibit 137) until 2024, Defendants  representation of my status was not "false" but rather a reflection of the agency's own recognition of my authority.

2.  **Case Authority:**

*Kungys v. United States*, **485 U.S. 759 (1988):** Establishes that a misrepresentation is material only if it has a natural tendency to influence or is capable of influencing the decision-making body. Because the SSA was already treating Defendant as authorized, Defendant's statement had zero impact on the agency's decision making process.

*United States v. Gaudin*, **515 U.S. 506 (1995):** Reaffirms that materiality is an element to be proven. Defendant's "check-box"

is non-material statement because the agency's own records confirm Defendant's status, rendering the checked box redundant and incapable of deceiving a party that already held the "truth" in its files. Furthermore, SSA Form 1699 is fatally and facially defective because there was no box to check that an action was pending and thus under dispute in a legal forum. **See Exhibit U**.

## VII. Challenging SSA Jurisdiction (Lucia/Berryhill)

1. **Argument:** Following *Lucia v. SEC*, 138 S. Ct. 2044 (2018), ALJs were required to be appointed in accordance with the Appointments Clause. Defendant's  case was heard by an ALJ who was not properly ratified, and that ratification was performed by an illegally seated official ( Nancy Berryhill), the actions are *ultra vires* (void), the case authority showing the GAO has advised Berryhill was unconstitutionally sitting is covered in **Exhibit O,** the Qui Tam. The GAO made the statement twice, once in 2017 and again in 2022. This was pointed out to the court, but in the 99% decline of any position Defendant has made in the

operative matter it has been ignored by this court. The benefit of the Qui Tam case is Whistle Blower fees based on the fraudulent $40 Million, which Defendant might have left as a closed case but finding absolutely no Discovery in his favor by 7 prior attorneys and a handful of days to prepare for Defendant's first Criminal case, using the Qui Tam as a discovery vehicle to find out who and when the hit was put on Moffatt is paramount for Moffatt disclosing the Lucia violations, then and now. The fees on $40 billion is a bonus in Whistleblower fees

2. **Jurisdictional Disputed Argument approved now by the Supreme Court:**

- *SEC v. Cochran*, **598 U.S. 1 (2023):** The Supreme Court held that District Courts have jurisdiction to hear constitutional challenges to administrative proceedings *before* final agency action. This is one of the reasons the SSA case is active pre-existing and briefing due this month. Defendant did not need to "exhaust" remedies within the

SSA when the challenge is that the process itself was constitutionally defective from its inception.

### VIII. The "Void Underlying Judgment" & Due Process

The underlying civil case is currently at the 9th Circuit Court of Appeals Docket **26-2839**, as such the criminal trial sentencing court cannot rely on a "disbarment" that is under active, meritorious challenge.

1. **Argument:** The Arizona Disbarment notice provided a "physical impossibility" (receipt date vs. hearing date), which is a clear violation of Procedural Due Process under the 14th Amendment. A conviction or penalty based on a void/defective administrative process is a denial of Due Process. Combined by a criminal being appointed as an ALJ in direct defiance of conflicts of interest, as well as an invalid appointment via the separation of powers line of cases such as Lucia, infra. This was brought to this court's attention but fell in the 99% declined motions Defendant brought, but is now thankfully live at the 9th circuit.

2. **Case Authority:***Mendoza-Lopez***, 481 U.S. 828 (1987):** The Supreme Court held that if a deportation order (or here, an administrative determination) is fundamentally flawed and did not provide for judicial review, it cannot be used as a predicate for a criminal conviction. Argue that the SSA case is the "predicate" that the government is improperly using to validate the § 1001 charge.

## IX. ARGUMENT FOR DOWNWARD VARIANCE

a. **Medical Necessity:** Defendant has documented severe Traumatic Brain Injury (TBI) with frontal lobe damage and environmental Asthma. Further custodial detention would compromise the Defendant's life and health given the need for environmental control.

b. **Moffatt has had four Grand Mal Seizures in 3 years.**

c. **Moffatt has documented 13** out of nearly 100 episodes, see URL for the 13, each of which could have triggered a 5th Grand Mal

Seizure. Watch the below URL to verify the asthma attacks.

https://drive.google.com/drive/folders/1M9bpvI59fsJ6_KQnU-wVVYSA-PFIEKva

d. **Moffatt went to a specialist that gave a diagnosis for the symptoms of the asthma episodes, see Exhibit T.**

e. **2026 Sentencing Guideline Amendments:** Newly promulgated guidelines and the first-time offender reduction (Zero-Point Offender) should result in a lower base offense level. Note Booker, infra has advised sentencing guidelines are unconstitutional, however many judges still use them.

f. **Lack of Economic Loss:** Defendant maintains that the Social Security Administration (SSA) earned attorney Fees in question do not constitute a "loss" under §2B1.1, as the legal work was performed and the underlying administrative challenges remain viable.

g. **Underlying Pre-existing** civil case is now at the 9th Circuit Court of Appeals  with briefing due in June.

h. **The Qui-**Tam case, where Moffatt is the Private  Attorney General regarding $40 billion in fraud, has requested to be

reopened 2:20-cv-03525-VBF-DFM. Briefing schedule ordered 5/11/2026, and Moffatt is acting as the Private Attorney General prosecuting over $40 billion dollars in fraud related to an illegally seated head of Social Security and improper ratification of nearly 1600 ALJ's resulting in $85 million in fraud annually. If successful Moffatt will have the ability to collect up to 30% of the fraud found as well as find if whistleblower protections were denied. The claim in the present case by Criminal Investigator Agent Ibarra to **1**. Not know Moffatt was in a protected period practicing in front of SSA until at least 1 30 2024 **Exhibit N**,(USAO's **Exhibit 137**) and still brought grand jury charges is highly suspect. **2**. Since the court in this matter did not allow Moffatt to direct the present case until he took over in August 2025, was given 17,000 pages of discovery on the first day of trial, and no time to actually see if there was a target on Moffatt's back because of his Whistleblower case 2:20-cv-03525-VBF-DFM, and this can now be done in the pre existing Qui tam during discovery,  which will likely lead to knowledge that at

least one iwitness of the government was less than truthful, and possibly the prosecution team may be in hot water for prosecutorial misconduct. ,The possible finder fees into the billions for Moffatt, is an added bonus.

i. **Moffatt's ability to practice SSA law,** is determined by SSA, itself. An illegal Arizona disbarment by a criminal appointed as an ALJ, in violation of Arizona's own constitution and rules is not dispositive of Moffatt's ability to practice in front of SSA. Note  Moffatt's SSA case was a preexisting case to the present matter, and is still viable with case  briefing this month.  As such Moffatt is still arguing his ability to practice SSA law, as well as for back payments not sent to Moffatt covered in the Criminal trial.

**X.   Statement of Position:** "The government asserts that the defendant's check-box entry constitutes a § 1001 violation. This assertion fails as a matter of law because:

1. **Absence of Materiality:** Per *Gaudin* and *Kungys*, a statement must be capable of influencing the agency. **Exhibit N and USAO's Exhibit 137** confirms the agency itself recognized the defendant as authorized to practice SSA Law  until 2024. A statement conforming to the agency's own active record cannot, as a matter of logic, be 'materially false' or 'fraudulent.'

2. **The SSA Form 1699 is faulty.** The form leaves only a binary option of disbarred or not, but does not have a box to check for an open appeal or ongoing litigation. See Exhibit U.

3. **Due Process Nullity:** The underlying civil disbarment, now pending before the 9th Circuit, is fundamentally flawed due to a violation of notice requirements (the impossibility of timely receipt). Under *Mendoza-Lopez*, a fundamentally flawed administrative process cannot be used as the basis for a criminal prosecution.

4. **Constitutional Jurisdictional Defect:** Pursuant to *Lucia v. SEC* and the reasoning in *Cochran v. SEC*, the administrative proceedings conducted by non-ratified SSA ALJ's are constitutionally void. Defendant requests this Court Stay Sentencing if the court is inclined to issue incarceration to avoid a miscarriage of justice inherent in penalizing an individual for an administrative status that the agency itself authorized.

## XI CHALLENGE TO THE UNDERLYING DISBARMENT (VOID JUDGMENT)

Enhancements in the **PSR** by Probation office Dodson are built upon the foundation of the illegal Arizona disbarment. Defendant provides the new following evidence that the underlying judgment is void *ab initio*. The information is new since a Motion in Limine prevented Defendant from discussing any Arizona issue, however Parole Office Dodson has removed that bar by using Arizona issues as her basis for the 8 level enhancement, removing the Level 14.

a. **Unconstitutional Appointment:** William J. O'Neil, ALJ State Employee was appointed via Arizona Supreme Court Rule 51. (**Exhibit Q**), which violates **Arizona Constitution Article 6 (Exhibit R)** regarding the election and Appointment of Judges;

b. **Conflict of Interest/Corruption:** O'Neil was appointed to oversee Grand Jury proceedings (**Crim Mis in re 66 SGI86**) in which he and his associates were targets. **Exhibit A** and **Exhibit E** show O'Neil shut down Grand Juries that had returned over 50 felonies against his circle. **Exhibit G** (Mark Dixon Affidavit) details kickbacks and a short sale involving O'Neil's family.

c. **Lack of Oath:** The **Matley Forensic Report (Exhibit P)** confirms that O'Neil's oath of office was never signed nor filed with the Secretary of State as required by statute. A judgment by an un-sworn, unconstitutionally seated official is void ab ignition.

## XII. CONCLUSION

When the improper Sentencing Enhancements are removed, the offense level drops to 4, yielding a guideline of 0–6 months. Given the pending 9th Circuit Briefing Schedule 26-2839,  (Case CV17-06029), as well as the Qui Tam pending briefing schedule 2:20-cv-03525-VBF-DFM and the medical necessity for environmental control, a sentence of time served or probation is the only outcome that satisfies the 18 U.S.C. § 3553(a) factors.

The Special Assessment (PSR Page 17, Line 106) of $100  has already been paid. Given the lack of victims, the absence of restitution requests, the application of the 2026 Guidelines, and the first-time offender reduction, Defendant argues his offense level should be 4.

Given that Moffatt was actually in custody for a day 9/3/2021, and on Home Confinement for nearly 5 years, to be exact since 9/4/2021 to 6/4/2026  equates to 1,735 days either in custody or in Home Confinement which exceeds the normal probation time, as such Moffatt requests time served to be the punishment.

Should the Court still be motivated to issue any incarceration sentence, Defendant requests this Court Stay sentencing to prevent the miscarriage of justice inherent in penalizing an individual for an administrative status that the agency itself authorized, especially in light of the underlying case regarding the disbarment is both pre-existing to this case and presently active at the 9th Circuit Court of Appeals. Additionally, incarceration would be cumbersome for Moffatt to operate as the Attorney General in the present Qui Tam case 2:20-cv-03525- VBF-DFM, **Exhibit T.**

Moffatt is the Private Attorney General in this case. Over $40 billion in fraud is being alleged, as well as violations of Whistle Blower protections.

### CONCLUSION

*WHEREFORE* Defendant requests the Court to STAY the Sentencing of June 4, 2026, due to four (4) underlying civil cases including one civil cases is now at the 9th Circuit Court of Appeals schedule for Briefing on 6/15/2026, among other issues mentioned above.

**Dated:  XX-XX-2026, XX**

**By:**
**/s/_____**
JEFFREY DEAN MOFFATT, COMA SUVIVOR, TBI, JD, MBA, BA and LL.M (Masters in Taxation Law) and *In Propria Persona – Ret. Fed Attorney*
Email Address: jeffreydeanjustin@gmail.com
Telephone No.: (661) 435-2417

Certification of filing using Pacer


Defendant Jeff Moffatt has given the opposition to assisting Attorney Mr. Diaz, whom will load the document according to Pacer requirements giving all parties proper notice,

/Jeff Moffatt

**Certification of Word Count**

Using the Word program 4,916 words are in this document

/Jeff Moffatt