TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
DAVID C. LACHMAN (Cal. Bar No. 261711)
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorneys
Major Frauds Section
        1100 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-5564
        Facsimile: (213) 894-2927
        E-mail:    david.lachman@usdoj.gov
                   nisha.chandran@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>             v.<br><br>JEFFREY DEAN MOFFATT,<br><br>             Defendant. | No. CR 21-00335-JAK<br><br>GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT JEFFREY DEAN MOFFATT<br><br>Sentencing<br>Hearing Date:  June 4, 2026<br>Hearing Time:  8:30 a.m.<br>Location:      Courtroom of the Honorable John A. Kronstadt |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys David C. Lachman and Nisha Chandran, hereby files its sentencing position for defendant Jeffrey Dean MOFFATT.

     This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the

United States Probation and Pretrial Services Office's presentence investigation report, and such further evidence and argument as the Court may permit.

Dated: May 21, 2026                    Respectfully submitted,

                                       TODD BLANCHE
                                       Acting Attorney General

                                       BILAL A. ESSAYLI
                                       First Assistant United States
                                       Attorney

                                       JENNIFER L. WAIER
                                       Chief Assistant United States
                                       Attorney &
                                       Chief, Criminal Division


                                       _____/s/_____
                                       DAVID C. LACHMAN
                                       NISHA CHANDRAN
                                       Assistant United States Attorneys

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

2

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.    INTRODUCTION**

Defendant Jeffrey Dean MOFFATT is a lawyer who was disbarred for soliciting sex and nude photographs from a prospective client who could not afford his services, and who responded not by accepting that judgment but by lying about it — for more than five years — so that he could keep representing Social Security claimants and keep collecting their money.  The State Bar of Arizona stripped MOFFATT of his license in April 2016.  Federal regulations then required him to disclose that disbarment to the Social Security Administration (the "SSA") before representing claimants before the agency. He did the opposite.  When SSA forms asked whether he had ever been disbarred or suspended, MOFFATT answered "no" — in writing, across approximately 65 separate claimant matters. (PSR ¶¶ 10, 13.)

The lie mattered, and MOFFATT knew why.  A truthful answer would have prompted the SSA's Office of General Counsel to investigate the reason for his disbarment, and, because his was a disbarment for misconduct, disqualification was the only outcome the SSA's rules allowed.  By concealing the disbarment, MOFFATT kept that process from starting: he delayed his disqualification, made the eventual proceedings harder, and in the meantime collected at least $113,146 in legal fees from his claimants' past-due benefits.  (PSR ¶¶ 14, 24.)  Those claimants entrusted their cases to a man they believed to be a lawyer in good standing, and he gave them every indication that he was — even as he was concealing from the SSA the very fact that would have ended his ability to represent them.  He abused their trust and the agency's alike. (PSR ¶¶ 26-27.)

MOFFATT understood exactly what he was hiding.  In September 2017, he complied with the Ninth Circuit's order to withdraw from his cases there because of his disbarment, even as he continued to certify to the SSA — on the forms required for payment — that he had never been disbarred.  (Dkt. 331 at 23.)  And he persisted after he was caught: even after the SSA confronted him, moving to disqualify him over the disbarment and later to sanction him for denying it on agency forms, he kept signing the same false certifications.  This was not a misunderstanding of his obligations.  It was a sustained decision, renewed dozens of times, that the rules did not apply to him.

After a five-day trial, a jury found MOFFATT guilty of false statements by trick, scheme, or device, in violation of 18 U.S.C. § 1001(a)(1) (Count Six).  (PSR ¶ 2.)  The United States Probation and Pretrial Services Office ("USPPO") calculated a total offense level of 14 and a Criminal History Category of I, yielding an advisory Guidelines range of 15 to 21 months.  (PSR ¶¶ 35, 41, 98.)  The government concurs in that calculation and respectfully recommends a sentence of 18 months' imprisonment — the middle of the range — followed by one year of supervised release, together with the $100 special assessment, which MOFFATT has already paid. Such a sentence is sufficient, but not greater than necessary, to serve the purposes of 18 U.S.C. § 3553(a).

A Guidelines sentence is warranted because the consideration that might ordinarily soften a sentence — the defendant's own account of his conduct — here cuts the other way.  MOFFATT has expressed no remorse and accepted no responsibility.  He declined to discuss the offense with the Probation Officer (PSR ¶ 19), and he maintains, in

2

the sentencing objections now before the Court, that he committed no crime and that the case should be dismissed outright.  A defendant who lies to a federal agency for five years, abuses the trust of the vulnerable claimants who depended on him, and then tells the sentencing court he did nothing wrong has not earned the leniency he and Probation propose.  He has demonstrated why a within-range custodial sentence is necessary.

**II.   STATEMENT OF FACTS**

   **A.    The Offense Conduct**

On April 6, 2016, the State Bar of Arizona disbarred MOFFATT for soliciting sexual favors and nude photographs from a prospective client who could not afford legal services. (Dkt. 215-8 (Decision and Order Imposing Sanctions (Mar. 7, 2016)).)  The disciplinary panel found that this was "not an isolated instance," but a "series of contacts" in which MOFFATT "on separate occasions repeatedly solicited sex from the client," conduct it found "intentional and for his own personal and sexual gratification."  (Id.)  The panel concluded that his conduct "demonstrate[d] complete indifference to his legal obligations as a lawyer, a flagrant disregard for the law, and indifference to the desperate financial, emotional and personal position of his prospective client."  (Id.) In 2016 and 2017, at least five federal courts followed, reciprocally disbarring MOFFATT: the United States Court of Appeals for the Armed Forces, the Supreme Court of the United States, the United States Tax Court, the United States Court of Appeals for the Ninth Circuit, and the United States Court of Appeals for Veterans Claims. (Dkt. 331 at 7; see also PSR ¶ 8.)

The SSA permits a benefits claimant to appoint a qualified representative, who must abide by published standards of conduct. (PSR ¶ 9.)  Among those duties, a representative was required to disclose to the SSA whether he had ever been disbarred or suspended from any bar or court to which he had been admitted to practice. (PSR ¶ 10.)  MOFFATT did not disclose his disbarments.  When SSA forms asked whether he had ever been disbarred or suspended, MOFFATT answered "no."  (PSR ¶ 10.)  In total, MOFFATT falsely represented to the SSA, and concealed from the SSA, that he had never been disbarred in approximately 65 matters.  (PSR ¶ 13.)  As a result of those false representations and omissions, MOFFATT received from the SSA at least $113,146 of claimants' past-due benefits.  (PSR ¶¶ 14, 24.)  MOFFATT understood exactly what he was concealing.  In September 2017, he complied with the Ninth Circuit's order to withdraw from his pending cases before that court because of his disbarment — even as he continued to certify to the SSA, on forms required for payment, that he had never been disbarred.  (See Dkt. 331 at 23.)

MOFFATT's concealment was not immaterial. Trial testimony established that a truthful answer would have triggered an SSA Office of General Counsel investigation, and that under the SSA's rules a disbarment for misconduct could end only in disqualification.  His false statements delayed the SSA's initiation of disqualification proceedings, made those proceedings more difficult, and supplied independent grounds for his disqualification.  Indeed, the SSA moved to sanction and disqualify MOFFATT in 2017, after it learned of his disbarment, and again in 2019, after it learned he had been falsely denying it on agency forms.

**B.    MOFFATT's Refusal to Accept His Disbarment**

MOFFATT's response to discipline has consistently been to attack the tribunal rather than accept its judgment.  Across the years he has pursued a series of collateral challenges to his Arizona disbarment, including a Petition for Special Action and a mandamus petition demanding an "investigation forthwith" into the presiding disciplinary judge and the rescission of his disbarment order.  He has likewise pressed a federal removal action and a qui tam suit, and now invokes a pending appeal, as grounds to avoid the consequences of his conviction.  None of those proceedings restored his license.  He remains disbarred.

This pattern is not new.  In disbarring MOFFATT, the Arizona disciplinary panel found "no applicable mitigating factors" and multiple aggravating ones, including a "selfish motive" and "intentional bad faith obstruction of the disciplinary proceeding." (Dkt. 215-8 (Decision and Order Imposing Sanctions at 17-21).)  It further found that he failed to appear for multiple hearings and for his own deposition in the proceeding.  (Id. at 6.)  And it observed that MOFFATT's prior discipline — a censure and one-year probation — had likewise involved court filings "that failed to meet the most basic requirement[s]," with "overwhelming deficiencies such as incorrect captions," misstated jurisdictional bases, and facts presented "in a confusing fashion," which the panel found "similar to his pleadings before us."  (Id. at 17.)

A federal court independently reviewed — and rejected — the same attacks MOFFATT still presses today.  When the Ninth Circuit considered whether to impose reciprocal discipline, its Appellate Commissioner found that MOFFATT had "failed to show by clear and

5

convincing evidence" that the Arizona proceedings denied him due process, lacked evidentiary support, or worked any grave injustice, and recommended that the court reciprocally disbar him and order him to withdraw from his pending Ninth Circuit cases. (Dkt. 175-5 at 43.) The Commissioner observed that some of MOFFATT's arguments "might have made a difference had they been presented 18 months ago," but that the reason they came too late was MOFFATT's own "failure to defend himself when required to do so." (Id.) That failure was a choice: as the Commissioner recounted, MOFFATT "impeded the proceedings and ultimately chose not to participate in them," after burying the disciplinary tribunal in serial recusal, removal, and stay motions. (Id. at 6, 34.)

Yet to this day — in his objections to the Presentence Report and to the recommendation letter — MOFFATT continues to insist that his disbarment is invalid, that the disciplinary judge was "appointed illegally," and that he was therefore free to certify to the SSA that he had never been disbarred. Before trial, the Court granted the government's motion to preclude MOFFATT from offering any evidence or argument on the validity of his disbarment, holding that its validity was not "a fact of consequence" to the charges and that any relevance was, in any event, substantially outweighed by the danger of "confusing the issues, misleading the jury and wasting time." (Dkt. 219.)

**C.    The Defendant's Conviction in This Case**

The grand jury returned a six-count indictment on July 23, 2021, charging five counts of wire fraud (Counts One through Five) and one count of false statements by trick, scheme, or device (Count Six). (PSR ¶ 1.) On September 10, 2021, MOFFATT was released on a $30,000

appearance bond signed by his wife, on conditions that included surrender of his passport and restriction of his travel to this District absent USPPO approval.  (Dkt. 18.)

Before trial, MOFFATT litigated extensively, raising — among many other arguments — entrapment, economic duress, and challenges to the sufficiency and materiality of the charges, all of which the government opposed and the Court denied.  (See Dkt. 227 (order denying pretrial motions).)  MOFFATT also failed to appear for several court hearings.  After his non-appearance at a May 15, 2025 status hearing, the Court warned that a bench warrant could issue. (PSR ¶ 5.)  MOFFATT attributed the absences to his health, but when the government followed up with one of his treating providers, the clinic had no documentation supporting his claim. (PSR ¶ 5.)

The five-day trial concluded on October 15, 2025, when the jury found MOFFATT guilty on Count Six and deadlocked on Counts One through Five.  (PSR ¶ 2.)  MOFFATT then moved for a judgment of acquittal under Rule 29 (Dkts. 290, 302), a motion that, beyond contesting the sufficiency of the evidence, recycled an array of collateral matters — claimed discovery and Brady/Giglio violations, his medical condition, the propriety of his Arizona disbarment, and the legality of a former Acting SSA Commissioner's tenure — that had no bearing on the elements of the offense and had already been rejected in a series of the Court's prior orders.  The Court denied the motion on February 19, 2026, holding the evidence sufficient to support the verdict on every element of Count Six and noting that each of MOFFATT's collateral arguments had already been rejected; it declined even to take judicial notice of his latest filings attacking

7

the disbarment, reiterating that the disbarment's alleged impropriety "is not relevant in this action."  (Dkt. 341 at 10 & n.3.)

In December 2025, while awaiting sentencing, MOFFATT filed an emergency motion to vacate all his bail conditions — including the prohibition on practicing law and the surrender of his passport — ostensibly to visit his ailing mother in Nevada, even though USPPO had already agreed to accommodate that travel under his existing conditions.  (Dkts. 334, 336.)

MOFFATT has accepted responsibility for none of it.  He declined to discuss the offense at his March 27, 2026 presentence interview. (PSR ¶ 19.)  In his sentencing objections, he asks this Court to find an offense level of 4, impose a sentence of time served, stay the case pending his collateral litigation, or dismiss the prosecution entirely.  (Dkts. 348, 349.)

**III.  THE PRESENTENCE REPORT AND GUIDELINES CALCULATIONS**

**A.    The Government Concurs with USPPO's Guidelines Calculation**

The government concurs with the PSR's calculation in full.  The applicable guideline for a violation of 18 U.S.C. § 1001(a)(1) is U.S.S.G. § 2B1.1, which carries a base offense level of 6 because the statutory maximum is five years.  (PSR ¶ 21; U.S.S.G. § 2B1.1(a)(2).) The calculation proceeds as follows:

- Base Offense Level: 6 (U.S.S.G. § 2B1.1(a)(2))
- Loss between $95,000 and $150,000: +8 (U.S.S.G. § 2B1.1(b)(1)(E))
- Abuse of Position of Trust: +2 (U.S.S.G. § 3B1.3)
- Zero-Point Offender: −2 (U.S.S.G. § 4C1.1)
- Total Offense Level: 14

The eight-level loss enhancement is correctly measured by the at least $113,146 MOFFATT received.[1]  Where, as here, a defendant fraudulently renders services while falsely posing as a licensed professional, the loss is the amount paid for those services, with no credit for their purported value.  (PSR ¶¶ 23-24; U.S.S.G. § 2B1.1, cmt. n.3(E)(v)(I).)  The two-level adjustment under § 3B1.3 applies because MOFFATT abused a position of trust: he bore an affirmative duty to disclose material information to the SSA in connection with his representation of claimants, and he exploited that position to conceal information capable of influencing the SSA's decision to permit him to practice and to pay him.  (PSR ¶¶ 26-27.)  Consistent with the PSR, no enhancement for obstruction of justice applies (PSR ¶¶ 17, 28), and no reduction for acceptance of responsibility is warranted, as MOFFATT put the government to its burden at trial by contesting the factual elements of guilt and has not accepted responsibility since (PSR ¶¶ 18-19, 31-32; U.S.S.G. § 3E1.1, cmt. n.2).

With a Criminal History Category of I (PSR ¶ 41), the resulting advisory range is 15 to 21 months.  (PSR ¶ 98.)  The offense is a Class D felony falling in Zone D of the Sentencing Table, for which the Guidelines provide a sentence of imprisonment.  (PSR ¶¶ 97, 103; U.S.S.G. § 5C1.1.)

---

[1] The PSR reflects that MOFFATT received $113,146 as a result of his false statement scheme.  (PSR ¶ 14.)  The evidence at trial, however, established that defendant received $126,331 in fees based on false representations made after his April 2016 disbarment.  This discrepancy does not affect the Guidelines calculations.

### B.    Defendant's Objections Provide No Basis to Disturb the Calculation

MOFFATT's request for an offense level of 4 has no foundation in the Guidelines; it is reached only by stripping out enhancements the PSR correctly applied and the evidence amply supports.

His acquitted-conduct arguments misfire twice over. The jury did not acquit him on Counts One through Five; it deadlocked.  And in any event, the Guidelines calculation rests entirely on the offense of conviction — the Count Six scheme and the $113,146 he obtained through it — not on the wire-fraud counts, so there is no acquitted (or hung) conduct in it to exclude.

His remaining Guidelines objections fare no better.  His request for a further reduction under the "first-time offender" provision and the "2026 amendments" seeks a benefit he has already received: the PSR applied the two-level zero-point-offender reduction under U.S.S.G. § 4C1.1 in reaching offense level 14.  His assertion that Booker renders the Guidelines "unconstitutional" mischaracterizes the case; Booker made the Guidelines advisory but left intact the Court's duty to calculate the range correctly and use it as the starting point of sentencing.  United States v. Booker, 543 U.S. 220 (2005); Gall v. United States, 552 U.S. 38, 49 (2007).  And his objection to the § 3B1.3 abuse-of-trust adjustment fails because both the SSA and the vulnerable claimants who retained him relied on his integrity, he thus held a position of trust, and he exploited it by concealing the disbarment he was bound to disclose.  (See PSR ¶¶ 26–27.)

Finally, his renewed attacks on the validity of his Arizona disbarment raise the same issue the Court has repeatedly held irrelevant to the charges — excluding it from trial and rejecting it

10

again when it denied his Rule 29 motion; the fact of his disbarment, and his knowledge of it, were established at trial.

## IV.   THE GOVERNMENT RECOMMENDS A SENTENCE OF 18 MONTHS' IMPRISONMENT

A sentence of 18 months, at the middle of the advisory range, is sufficient but not greater than necessary to satisfy the purposes of § 3553(a).

### A.   The Nature of the Offense and the History and Characteristics of the Defendant

MOFFATT's offense was not a momentary lapse.  It was a sustained course of deception, repeated across approximately 65 claimant matters over more than five years, by a trained lawyer who understood exactly what he was certifying and why it mattered.  (PSR ¶¶ 7-14; Dkt. 331 at 23.)  He directed his deception at a federal benefits program serving the aged, blind, and disabled, and at the very claimants who had entrusted him to represent them.  That he may have provided some legitimate services to those claimants (PSR ¶ 16) does not diminish the offense; it underscores that MOFFATT had every opportunity to disclose the truth and chose, again and again, to conceal it so that he could keep practicing and keep being paid.

The history and characteristics of this defendant weigh against leniency rather than for it.  MOFFATT has expressed no remorse and accepted no responsibility. He declined to discuss the offense with Probation (PSR ¶ 19), and even now — in the very objections through which he seeks leniency — he maintains that he committed no crime and asks the Court to dismiss the case outright (Dkts. 348, 349).

MOFFATT's refusal to accept an adverse judgment is not a product of this prosecution.  As set out above, it is how he has responded to every tribunal that has ruled against him for the past decade —

failing to defend the State Bar's charges on the merits, then attacking the proceeding and seeking to undo its result in forum after forum, a pattern a federal appellate officer reviewing his disbarment expressly identified.  (See Section II.B.)  MOFFATT brought that identical approach to this Court.  He made the validity of his disbarment the centerpiece of pretrial motions the Court denied (Dkt. 227) and of an issue the Court excluded from trial as irrelevant (Dkt. 219); after the jury convicted him, he recycled the same collateral grievances in a Rule 29 motion the Court denied as already rejected (Dkt. 341); and at sentencing he asks this Court, yet again, to set the conviction aside and dismiss the case (Dkts. 348, 349).  A defendant who has spent ten years relitigating every judgment against him — and who tells this Court, even at sentencing, that he did nothing wrong — has demonstrated precisely the history and characteristics that call for a meaningful custodial sentence, not the leniency he and Probation propose.  18 U.S.C. § 3553(a)(1).

### B.    The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment

A lawyer who is disbarred for misconduct, and who responds by lying to a federal agency to keep practicing, strikes at the integrity of the very system of professional regulation designed to protect the public.  18 U.S.C. § 3553(a)(2)(A).  The seriousness of that conduct is compounded by who bore its risk.  MOFFATT did not lie to the SSA in the abstract; he did so to keep representing aged, blind, and disabled claimants who had entrusted their cases to him, and who had no way of knowing that the State Bar of Arizona and at least five federal courts had stripped him of the license his representation presupposed.  He gave those claimants every indication

12

that he was a lawyer in good standing while concealing the disbarment that he was bound to disclose.  (PSR ¶¶ 26-27.)

MOFFATT's conduct reflects not a misunderstanding of his obligations but a considered decision to disregard them — and his post-conviction conduct, including his demand that this Court disregard the jury's verdict and dismiss the case, reflects the same disregard for legal authority.  A sentence of time served or a downward variance would tell MOFFATT, and others similarly situated, that years of concealment from a federal agency carry no meaningful consequence.  It would also leave MOFFATT to profit from his crime: he collected at least $113,146 in fees by concealing his disbarment (PSR ¶ 14), and a time-served sentence would let him keep that windfall and answer for a five-year fraud with the single day he has spent in custody.  A within-range sentence promotes respect for the law; a token one would undermine it.

**C.    The Need for Deterrence and to Protect the Public**

A within-range custodial sentence is needed both to deter others and to protect the public from MOFFATT.  18 U.S.C. § 3553(a)(2)(B), (C).  MOFFATT's offense was deliberate and sustained — a course of conduct he chose to repeat, form after form, for financial gain. Crimes of that character — deliberate economic offenses committed by educated professionals who weigh risk against reward — are "prime candidate[s] for general deterrence." United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006).  The deterrent message matters most to the very population to which MOFFATT belongs: licensed and formerly licensed professionals who might calculate that concealing a disqualifying disbarment from a federal agency is worth the risk.  A within-range prison sentence tells them it is not.  A variance to

13

probation, six months, or time served would tell them the opposite — that years of concealment from a federal benefits program carry no real cost at all.

Specific deterrence is, if anything, more pressing, because the usual assumption that prosecution and conviction will themselves deter does not hold for this defendant.  MOFFATT has never accepted responsibility and continues to insist he did nothing wrong.  His persistence in the face of direct warnings is telling: the SSA notified him in 2017 that it was moving to disqualify him for his disbarment, yet he continued to certify on agency forms that he had never been disbarred — and he did so again in 2020, even after the SSA notified him in 2019 that it was sanctioning him for those very misrepresentations.  (Dkt. 331 at 20.)  Nor is the risk of repetition hypothetical.  After his conviction, while awaiting sentencing, MOFFATT moved to vacate the condition barring him from practicing law (Dkt. 334) — relief that, as the government explained, would risk his resuming the same conduct by concealing his disbarment from prospective clients, courts, and agencies (Dkt. 336 at 7).  That the harm he poses is economic makes it no less a danger.  See United States v. Reynolds, 956 F.2d 192, 192 (9th Cir. 1992) (danger to the community may encompass "pecuniary or economic harm").  A custodial sentence is necessary to protect the public from a defendant who has sought to return to the very work that produced his crime and who, even now, denies that the crime was wrong.

**D.    Probation's Recommended Variance and Defendant's Time-Served Request Should Be Rejected**

Probation recommends a six-month sentence, and MOFFATT asks for time served or probation, each resting on two asserted mitigators:

14

the time MOFFATT has spent on pretrial release, and his medical conditions.  (Dkt. 345 at 5; Dkt. 349 at 14, 23.)  Neither warrants a sentence below the advisory range, and the factors discussed above counsel a sentence within it.

First, MOFFATT's years on pretrial release were not custody, and they are not a basis for leniency.  He was released on a $30,000 bond and, in Probation's own words, "remained in the community" for nearly five years.  (Dkt. 18; Dkt. 345 at 5.)  His characterization of that period as "1,735 days on Home Confinement Detention" (Dkt. 349 at 5) is inaccurate; release subject to conditions is not detention and earns no sentencing credit.  See Reno v. Koray, 515 U.S. 50, 65 (1995).  Nor does mere compliance with conditions he was legally required to obey justify a downward variance — particularly where, as Probation acknowledges, "there was a period where he failed to appear to multiple court hearings," an explanation for which went unsupported when the government checked.  (Dkt. 345 at 5.)  And to the extent the case has taken nearly five years to reach sentencing, much of that time is attributable to MOFFATT's own conduct — a barrage of pretrial motions, last-minute replacements of counsel, and repeated failures to appear.  A defendant should not be rewarded for the delay he created.

Second, MOFFATT's medical conditions do not warrant a below-Guidelines sentence.  The government does not minimize them, but the Bureau of Prisons is equipped to provide necessary medical and mental-health care, and the Court may recommend a facility suited to his needs.  The conditions MOFFATT and Probation describe are of a kind the Bureau regularly manages, and they do not render the imprisonment the Guidelines require inconsistent with adequate care.

15

Probation itself recognizes that imprisonment is required; the only question is its length.

Most fundamentally, the mitigation Probation identifies cannot bear the weight placed on it, because the history and characteristics of this defendant point the other way.  Probation lists "post-offense conduct" as a factor that might support a variance (PSR ¶ 113), but MOFFATT's post-offense conduct is aggravating, not mitigating.  He has continued to relitigate his disbarment in forum after forum, and, since his conviction, has moved to vacate the condition of pretrial release barring him from practicing law.  Indeed, MOFFATT tells the Court that a lenient sentence would let him "continue his critical legal work."  (Dkt. 349 at 34.)  That is not a reason for leniency; it is a statement of intent to resume the conduct at the heart of his crime — representing clients while concealing that he has been disbarred.  He seeks the Court's leniency, in short, to return to a practice that the State Bar of Arizona and at least five federal courts have stripped from him.  A Guidelines sentence, not a downward variance, is what that conduct requires.

Finally, MOFFATT's request to stay sentencing pending his collateral challenges to his disbarment (Dkt. 349 at 34) should be denied.  The validity of his disbarment is not an issue in this case — the Court has already so held — and his civil litigation in other forums provides no basis to defer sentencing on a final jury verdict.

**E.   MOFFATT's Remaining Arguments Provide No Basis for Leniency**

MOFFATT's submissions raise a series of further arguments, none of which bears on the sentence.

First, MOFFATT contends his prosecution was retaliation meant to "silence" him as a qui tam "Private Attorney General," and that

prison would impede that suit.  (Dkt. 348 at 19-20; Dkt. 349 at 13.) He raised vindictive and selective prosecution claims before trial; the Court rejected them, and a jury convicted him.  (Dkt. 227.) Whatever role he may have as a relator in a separate civil action is not a mitigating circumstance, and the possibility that incarceration might inconvenience that litigation is not a § 3553(a) factor.

Second, MOFFATT argues that the SSA "authorized" his practice and is "estopped" from claiming a loss because it did not complete his disqualification until 2024.  (Dkt. 348 at 20; Dkt. 349 at 24.) The argument is self-defeating: whatever authorization he held, he held it because he had falsely certified that he had never been disbarred — the very conduct of which he was convicted.  A defendant cannot convert his fraud into a defense by invoking the approval the fraud produced, and the date the SSA finally caught him does not make the certifications he signed along the way any less false.

Third, MOFFATT invokes Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), and SEC v. Cochran, 598 U.S. 175 (2023), to argue he was "eligible" to practice before the SSA.  (Dkt. 348 at 25.)  Those cases concern judicial review of agency action; they say nothing about whether MOFFATT lied to the SSA.  His eligibility is not the offense — his false statements are — and the Court has already determined that the relitigation of his disbarment is irrelevant to the criminal case.

**F.    The Need to Avoid Unwarranted Sentencing Disparities**

A sentence of 18 months also serves § 3553(a)(6)'s concern with avoiding unwarranted disparities among similarly situated defendants. The Guidelines exist to promote uniformity, and the surest way to honor § 3553(a)(6) is to calculate the range correctly and impose a

sentence within it.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010); Gall, 552 U.S. at 54.  A sentence of 18 months falls squarely within the correctly calculated range and avoids the disparity that a substantial downward variance would create relative to similarly situated defendants.

MOFFATT's own disparity argument looks in the wrong direction. He contends that other Arizona lawyers received lighter bar discipline than he did: a one-day suspension here, a six-month suspension there.  (Dkt. 348 at 19; Dkt. 349 at 23.)  But § 3553(a)(6) concerns disparities among federal defendants found guilty of similar conduct, not disciplinary outcomes in state bar proceedings.  Comparing MOFFATT's federal sentence for lying to a federal agency to another lawyer's bar suspension is not the comparison the statute contemplates.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully recommends that the Court sentence defendant to 18 months' imprisonment, followed by one year of supervised release; and impose the $100 special assessment, which has been paid.